**RECORD NO. 14-1148**

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

For The District of Columbia Circuit

# GEORGE W. FINCH;
# JOHN DENNIS HONEYCUTT,

*Petitioners*,

**v.**

# UNITED STATES DEPARTMENT OF AGRICULTURE, before the Secretary of Agriculture,

*Respondent.*

## ON APPEAL FROM THE DEPARTMENT OF AGRICULTURE

———————

## PAGE PROOF BRIEF OF PETITIONERS

———————

**Michael A. Hirsch**
SCHLANGER SILVER BARG & PAINE, LLP
**109 North Post Oak Lane, Suite 300**
**Houston, Texas 77024**
**(713) 785-1700**
**mhirsch@ssbplaw.com**

*Counsel for Petitioners*

**THE LEX GROUP**DC ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C. 20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

**A.     PARTIES**

The parties in this case are Petitioners George Finch and John Dennis Honeycutt ("Finch/Honeycutt") and Respondent United States Department of Agriculture before the Secretary of Agriculture ("USDA").  These were the only parties before the agency in the proceeding below, Third Coast Produce Company, Ltd., having been previously dismissed.

**B.     RULING UNDER REVIEW**

The ruling under review in this case is the Order and Decision of the USDA entered on the 6th day of June, 2014, "*In Re:  George Finch, Petitioner, and John Dennis Honeycutt, Petitioner*" under PACA-APP Docket No. 13-0068 and PACA-APP Docket No. 13-0069.

**C.     RELATED CASES**

This case has not been previously before this Court, nor any other court except the Administrative Court from which this appeal is taken.  There are no related cases in this matter.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

TABLE OF CONTENTS............................................................ ii

TABLE OF AUTHORITIES .....................................................iv

GLOSSARY ............................................................. viii

JURISDICTION..................................................................1

STATEMENT OF ISSUES TO BE RAISED .......................................2

STATUTES AND REGULATIONS.................................................3

STATEMENT OF THE CASE....................................................4

SUMMARY OF THE ARGUMENT ...............................................7

ARGUMENT ....................................................................8

     A.    THE ACT VIOLATES FUNDAMENTAL PRINCIPLES OF DUE PROCESS AND IS AN UNCONSTITUTIONAL FORFEITURE IN VIOLATION OF U.S.C.A. TITLE 18, CHAPTER 46, §§ 981, *et seq.* ...........................................13

     B.    THE ACT IS UNCONSTITUTIONALLY OVERBROAD FOR THE REASON THAT IT PENALIZES VIRTUOUS NON-CULPABLE CONDUCT AS IF IT WERE THE CONTRARY ........26

C.    PETITIONERS    HAVE    EACH    PROVEN,    BY
      UNCONTROVERTED    EVIDENCE,    THAT    THE
      CIRCUMSTANCES   AND   EVENTS   CAUSING   AND
      RESULTING IN THE DEFAULT OF PAYMENT UNDER
      THE ACT, AS AMENDED, TO BE CONCLUDED BY THE
      COURT TO BE THE SOLE, INDEPENDENT ACT OF A
      THIRD-PARTY OFFICER/DIRECTOR OF THE COMPANY
      FROM WHICH PETITIONERS DID NOT PROFIT OR
      BENEFIT, AND IN WHICH PETITIONERS DID NOT
      PARTICIPATE,    WHERE    THE    CONDUCT    OF
      PETITIONERS WAS NOT CULPABLE WITHIN THE
      DECLARED INTENT OF THE ACT, AS AMENDED;
      THESE   PRINCIPALS   COULD   ONLY   HAVE   BEEN
      NOMINAL OFFICERS OR DIRECTORS, viz-a-viz THE
      TRANSACTION CAUSING THE DEFAULT IN PAYMENT
      UNDER PACA.....................................................................................38

CONCLUSION ......................................................................................43

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ADDENDUM

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<u>**CASES**</u>

*BellSouth Corp. v. F.C.C.*,
    162 F.3d 678 (1998) ..............................................................................25, 34

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996)......................................................................................18

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247 (1981)................................................................................14, 15

*Coffin v. United States*,
    156 U.S. 432 (1895)......................................................................................25

*Coosemans Specialties, Inc. v. Dep't of Agric.*,
    482 F.3d 560 (D.C. Cir. 2007)........................................................15, 26, 27

*Cummings v. Missouri*,
    71 U.S. 277 (1866).......................................................................................34

*Dent v. West Virginia*,
    129 U.S. 114 (1889)......................................................................................34

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003)......................................................................................18

*Ex parte Garland*,
    71 U.S. 333 (1866).......................................................................................34

*Farley & Calfee, Inc.*,
    941 F.2d 964 (9th Cir. 1991) .......................................................................10

*Freuler v. Parker*,
    803 F. Supp. 2d 630 (2011) .........................................................................10

* *Chief Authorities are Designated by an Asterisk*

*George Steinberg & Son, Inc. v. Butz,
  491 F.2d 988 (1974) ...................................................................24

Guidry v. Bank of LaPlace,
  740 F. Supp. 1208 (1990) ...........................................................10

*Hawkins v. Agric. Mktg. Serv., Dep't of Agric., U.S.,
  10 F.3d 1125 (5th Cir. 1993) ......................................... 16-17, 25, 30, 31, 32

*In re Third Coast Produce Company, Ltd.,
  ____ Agric. Dec. ____ (Apr. 27, 2012)...........................................4

*Kleiman & Hochberg, Inc. v. U.S. Dept. of Agriculture,
  49 F.3d 681 (2007) .....................................................................36

*Matthews v. Bankcorpsouth Bank,
  2010 WL 797790, M.D.La., March 01, 2010
  (NO. CIV.A. 09-910-JJB)............................................................30

*McEwen v. Pace,
  538 S.W.2d 426 (1976)................................................................10

*Norinsberg v. U.S. Dept. of Agriculture,
  162 F.3d 1194, 333 U.S. App. D.C. 287 (1998)....................................27, 34

Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.,
  692 F.3d 960 (9th Cir. 2012) .......................................................10

*Quinn v. Butz,
  510 F.2d 743 (D.C. Cir. 1975)....................................................20

*Siegel v. Lyng,
  851 F.2d 412 (D.C. Cir. 1988)................................... 13, 14, 15, 17, 35, 36, 41

*State Farm Mut. Auto. Ins. Co. v. Campbell,
  538 U.S. 408 (2003)...............................................................18, 19

*Taylor v. U.S. Dept. of Agric.,
  636 F.3d 608 (D.C. Cir. 2011).............................................22, 24, 39

*U.S. v. $2,350,000.00 In Lieu of One Parcel of Property
Located at 895 Lake Avenue Greenwich, Connecticut,
   718 F. Supp. 2d 215 (D. Conn. 2010) ....................................................22, 23

*U.S. v. Real Property Located at 730 Glen-Mady Way,
Folsom, Sacramento County, CA,
   590 F. Supp. 2d 1295 (E.D. Cal. 2008) ......................................................22

United States v. Lee,
   183 F.3d 1029 (9th Cir. 1999) ....................................................................10

*Veg-Mix, Inc. v. United Sates Dep't of Agric.,
   832 F.2d 601 (D.C. Cir. 1987)......................................................................36

*Weinberger v. Salfi,
   422 U.S. 749 (1975)......................................................................................31

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend VII.............................................................................................25

U.S. CONST. art. I, § 9..........................................................................................2, 9

U.S. CONST. art. I, § 9, cl. 3...................................................................................26

U. S. CONST. art. I, § 10, cl. 1 ................................................................................26

## STATUTES

7 U.S.C. § 499a .......................................................................................................43

7 U.S.C. § 499a et seq.............................................................................................12

7 U.S.C. §§ 499a-499s ..........................................................................................1, 4

7 U.S.C. § 499a(b)(9).............................................................................................20

7 U.S.C. § 499b(4) ..........................................................................................4, 5, 6

7 U.S.C. § 499d(b) ...................................................................................................6

7 U.S.C. § 499h(b) ...............................................................................6

18 U.S.C.A. §§ 981, *et. seq.*........................................................2, 9, 13, 23

## REGULATION

7 C.F.R. §§ 1.130-.151 .......................................................................1, 5

## OTHER AUTHORITIES

Black's Law Dictionary (9th ed. 2009) .................................................14

Hearings on H.R. 5023 before the Subcommittee on Domestic Marketing of the House Committee on Agriculture, 87th Con., 1st Sess., ser. P (1961)...............20

Henry Campbell Black, Handbook on the Construction and Interpretation of the Laws 287 (1896) ...................................................14

## <u>GLOSSARY</u>

| | |
|---|---|
| Chief ALJ | Chief Administrative law Judge Peter M. Davenport |
| Dennis | John D. Honeycutt |
| Director | Karla D. Whalen, PACA Division, Fruit and Vegetable Programs, Agricultural Marketing Service, United States Department of Agriculture |
| PACA/the Act | Perishable Agricultural Commodities Act (1930) |
| Third Coast/ the Company | Third Coast Produce Company, Ltd. |
| USDA | United States Department of Agriculture |

## JURISDICTION

This case is before the Court requested by Petitioners George Finch and John Dennis Honeycutt for the for the Review of the Order and Decision emanating from the United States Department of Agriculture, before the Secretary of Agriculture, entered on the 6th day of June, 2014 under PACA-APP Docket No. 13-0068 and PACA-APP Docket No. 13-0069. Petitioners Finch and Honeycutt timely filed Joint Petition for Review with this Court on August 5, 2014. This court has jurisdiction over this appeal under the Administrative Procedure Act given that it previously was heard by before an Administrative Law Judge of the United States Department of Agriculture, an agency of the United States Government.

The Administrative Court in the underlying proceedings for review had jurisdiction under the Perishable Agricultural Commodities Act, 1930, as amended (7 U.S.C. §§ 499a-499s) ("PACA"). The rules of practice applicable to the underling proceeding are the Rules of Practice Governing Formal Adjudicatory Proceedings Instituted by the Secretary Under Various Statutes (7 C.F.R. §§ 1.130-.151).

## STATEMENT OF ISSUES TO BE RAISED

A.    Whether the Act violates fundamental principles of due process and is an unconstitutional forfeiture of property and in violation of the spirit of U.S.C.A. Title 18, Chapter 46, §§ 981, *et seq*., and, as well, the Act as applied in the circumstances of this case violates the Bill of Attainder Clause, Article I, Section 9 of the United States Constitution.

B.    Whether the Act is unconstitutionally overbroad for the reason that it penalizes virtuous non-culpable and lawful conduct as if it were the contrary.

C.    Petitioners have each proven, by uncontroverted evidence, that the circumstances and events causing and resulting in the default of payment under the Act, as amended, should be and concluded by the Court to be the sole, independent act of a third-party officer/director of the Company from which Petitioners did not profit or benefit, and in which Petitioners did not participate, where the conduct of Petitioners was not culpable within the declared intent of the Act, as amended; these principals could only have been nominal officers or directors, *viz-a-viz* the transaction causing the default in payment under PACA.

2

## <u>STATUTES AND REGULATIONS</u>

Pertinent statutes and regulations are set forth in the addendum.

## <u>STATEMENT OF THE CASE</u>

On October 3, 2012, Karla D. Whalen, Director, PACA Division, Fruit and Vegetable Programs, Agricultural Marketing Service, United States Department of Agriculture ("Director") in behalf of the United States Department of Agriculture ("USDA") determined George Finch and John Dennis Honeycutt were "responsibly connected" with Third Coast Produce Company, Ltd. ("Third Coast") during the period of time when Third Coast violated the Perishable Agricultural Commodities Act, 1930, as amended (7 U.S.C. §§ 499a-499s) ("PACA" and/or the "Act").  The Director had determined that "Third Coast willfully, flagrantly, and repeatedly violated 7 U.S.C. § 499b(4) by failing to make full payment promptly to 21 sellers of the agreed purchase prices, or balance of the agreed purchase prices, in the amount of $514,943.40 for 207 lots of perishable agricultural commodities, which Third Coast purchased, received, and accepted in the course of, or in contemplation of, interstate and foreign commerce, during the period February 5, 2010, through July 16, 2010.  *In re Third Coast Produce Company, Ltd*., ____ Agric. Dec. ____ (Ap. 27, 2012).  (Index 3)[1].  As are result of the determination as to the referenced individuals, having been "responsibly connected," PACA precludes their participation in a business under license by the Department of

---

[1] References to entries from the Certified List of Record are denoted with "Index __."

Agriculture for produce distribution, for a substantial period of time and, as well, subjects those individuals to non-dischargeable personal liability for the produce debts of the corporate entity by which they were employed. Order of Dismissal as to Third Coast Produce Company, Ltd. and Order Setting Date was signed by the Chief Administrative Law Judge on February 12, 2013. (Index 11). Pursuant to the rules of practice applicable to that proceeding[2], Petitioners Finch and Honeycutt each filed a petition for review of the Director's "responsibly connected" determination. (Index 9 at PX-8).

On February 12, 2013, Chief Administrative Law Judge Peter M. Davenport ("Chief ALJ") consolidated the two "responsibly connected" proceedings, *In re George Finch*, PACA-APP Docket No. 13-0068, and *In re John Dennis Honeycutt*, PACA-APP Docket No. 13-0069. On August 13, 2013, the Chief ALJ conducted an oral hearing in Washington, D.C. (See Hearing Transcript).

On November 20, 2013, after the parties filed post-hearing briefs, the Chief ALJ issued a Decision and Order: (1) concluding Mr. Finch was responsibly connected with Third Coast during the period when Third Coast committed willful, flagrant, and repeated violations of 7 U.S.C. § 499b(4) by virtue of his active participation in Third Coast's operations and his status as an officer and director of

---

[2] The rules of practice applicable to that proceeding are the Rules of Practice Governing Formal Adjudicatory Proceedings Instituted by the Secretary Under Various Statutes (7 C.F.R. §§ 1.130-.151).

Third Coast; (2) concluding Mr. Honeycutt was responsibly connected with Third Coast during the period when Third Coast committed willful, flagrant, and repeated violations of 7 U.S.C. § 499(b)(4) by virtue of his active participation in Third Coast's operations and his status as an officer and director of Third Coast; (3) affirming the Director's October 3, 2012 determinations that Mr. Finch and Mr. Honeycutt were responsibly connected with Third Coast during the period when Third Coast committed willful, flagrant, and repeated violations of 7 U.S.C. § 499b(4); and (4) stating Mr. Finch and Mr. Honeycutt are subject to the licensing restrictions in 7 U.S.C. § 499d(b) and the employment restrictions in 7 U.S.C. § 499h(b). (Index 21). There have been no determinations of culpability by the said individuals notwithstanding the simple conclusion of "responsibly connected."

On December 17, 2013, Mr. Finch and Mr. Honeycutt filed a Petition for Appeal and Brief in Support Thereof. (Index 23). On January 8, 2014, the Director filed a Response to Petitioners' Appeal. (Index 25). On June 6, 2014, the Decision and Order was filed and signed by William G. Jenson, Judicial Officer. (Index 26). On August 19, 2014, Joint Motion for Stay Order was filed by the USDA. (Index 28). On August 20, 2014, Stay Order was filed and signed by William G. Jenson, Judicial Officer. (Index 29).

On August 5, 2014, Petitioners filed Joint Petition for Review Of An Agency, Board, Commission, Or Officer with this Court.

## SUMMARY OF THE ARGUMENT

As the Statement of Issues reads, the Act in question violates multiple Constitutional prohibitions and rights preserved as particularly stated in the following extended Argument. Cases construing the Act have criticized its content and enforceability, but avoided ruling based upon that criticism and intellectually inconsistent with standing law relating to other legislation. The PACA legislative construct ignores Constitutional mandates as relating to punishment without trial, excessive penalties and bill of attainder issue. The Act assesses punishment without the opportunity for redress, *i.e.*, punishment without trial on the issue of culpability. The Act provides for an unconstitutional forfeiture of property again, without determination of actual participation in the offense or wrongdoing that the Act was intended to avoid.

## ARGUMENT

This Brief relies and is in part, but not exclusively, predicated upon a departure from case precedent.  Of recent date, Superior or Appellate Court(s) have remanded for lower court redetermination based upon their instructed departure from what had been prior standard, all as detailed below.  Furthermore, good cause, both public policy and careful legal reasoning, demonstrate fundamental flaws in prior published opinions under similar facts and circumstances, the departure from which opinions is presented to this Court for its careful consideration.

Petitioners assert the following points of law and fact to support their claim that they, George Finch and John D. Honeycutt, were each, although being technically "responsibly connected," but were not in fact or theory culpable in the determination, uncontested by Petitioners, that Third Coast Produce Company, Ltd. (now known as TCP Ventures, Ltd.) ("the Company"), with whom they were at all relevant times associated, in the default of that Company, in violation of the Perishable Agricultural Products Act ("PACA" or "the Act"):[3]

---

[3]  The issues such as they are briefly framed, in what follows at Sections A, B, and C, unavoidably overlap, although distinctions are attempted to be drawn in the commentary that follows.

A.     The Act violates fundamental principles of due process and is an unconstitutional forfeiture of property and in violation of the spirit of U.S.C.A. Title 18, Chapter 46, §§ 981, *et seq*., and, as well, the Act as applied in the circumstances of this case violates the Bill of Attainder Clause, Article I, Section 9 of the United States Constitution.

B.     The Act is unconstitutionally overbroad for the reason that it penalizes virtuous non-culpable and lawful conduct as if it were the contrary.

C.     Petitioners have each proven, by uncontroverted evidence, that the circumstances and events causing and resulting in the default of payment under the Act, as amended, should be and concluded by the Court to be the sole, independent act of a third-party officer/director of the Company from which Petitioners did not profit or benefit, and in which Petitioners did not participate, where the conduct of Petitioners was not culpable within the declared intent of the Act, as amended; these principals could only have been nominal officers or directors, *viz-a-viz* the transaction causing the default in payment under PACA.

**Standard of Review:** The standard of review for all issues ruled upon by the administrative court requires this court to find the decision of the administrative judge "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the

9

law...."'" in order to merit reversal *Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.*, 692 F.3d 960, 966 (9th Cir. 2012) (citing *Farley & Calfee, Inc.*, 941 F.2d 964, 966 (9th Cir. 1991)). For questions of constitutionality of the regulation this court's standard of review is de novo. *United States v. Lee*, 183 F.3d 1029, 1031 (9th Cir. 1999).

In this particular instance, the circumstances and activities are clearly that which were beyond the knowledge and control of those who would otherwise be designated as responsible parties strictly within the definition of the statute, as officers and/or directors of the operative entity which failed to pay for the produce subject to PACA limitations. See Hearing Transcript at page 46, line 11 through page 51, line 15 (including PX 10 and PX 11). Consistent with the general rule of common law, is that one upon whom a fraud is perpetrated is not charged with responsibility of having to discover the fraud and avoid it. See *e.g.*, *McEwen v. Pace*, 538 S.W.2d 426 (Ct. of App. San Antonio, 1976); see also *Guidry v. Bank of LaPlace*, 740 F. Supp. 1208, 1990 WL 90344, RICO Bus. Disp. Guide 7617, E.D.La., June 08, 1990 (No. CIV A 89-1690); and see particularly *Freuler v. Parker*, 803 F. Supp. 2d 630, which relied upon prior case law quoting "…absent grounds to suspect deception, neither corporate boards nor senior officers can be charged with wrongdoing simply for assuming the integrity of employees and the honesty of their dealings on the company's behalf." No less compelling to overrule prior case law is the less than satisfactory conclusion that one entering

10

employment in the industry does so with knowledge that he or she is subject to the Act.  Where in our jurisprudence do we find justification for the enforcement of an unconstitutional act with the argument that one should have prior knowledge of its defect and is consequently subject to its provisions, irrespective of its fatal, constitutional defect?  The defrauding party cannot simply point the finger at the party defrauded and avoid liability by claiming that he or she should have known or discovered the nefarious conduct.  Likewise, as they themselves could not have avoided the fraud perpetrated upon them as explained below and as evidenced to the Court, these individuals George Finch and John D. ("Dennis") Honeycutt, either as officer or director, neither of them could have prevented the negative consequences which include a default in payment for produce.  Petitioners actually had a CPA firm monitor the books and records of the Company on an annual basis without disclosure of the fraud.  See Hearing Transcript at page 41, lines 15 through 22.  In essence, based upon this fact scenario, neither George Finch nor John D. ("Dennis") Honeycutt were culpable parties.  See Hearing Transcript at page 37, line 18 through page 39, line 6.

This Court considering this Petition for Review is particularly informed that Javier Bueno is the son of the remaining percentage owner of the Company, namely Artemio Bueno.  Noting this, it should be no surprise that this business, consisting of an association of many years among these persons, has been one

11

based upon mutual trust and confidence, now betrayed by Javier Bueno, virtually one of the family – to this, Petitioners testified.  See Hearing Transcript at page 40, line 13 through page 41, line 6.

In an effort to accommodate payment to those commodity traders deserving of that payment, the surviving principals of the Company, Messrs. Finch and Honeycutt, sought other providers of produce and those willing to assume the heavy loan indebtedness of the Company.  This was accomplished where that indebtedness was compromised by the lenders and assumed by entity or entities in exchange for their acquisition of assets with certain exceptions, among which exceptions were the accounts receivable.  Those accounts receivable, to the extent of their limited magnitude in the hundreds of thousands of dollars, were prorated among the creditors of the Company, with priority to participants under the Perishable Agricultural Commodities Act, 1930, as amended, (7 U.S.C. § 499a *et seq*.) ("PACA").  Payment to the extent of those funds was faithfully made, prorated as indicated, according to the uncontroverted testimony of Petitioners. Through the selfless efforts of Finch and Honeycutt, and without guarantee of a surviving job for each, those transactions were made which would allow the continued employment of the remaining number of long term employees, and collect the receivables for the benefit of these claimants, which receivables might then compensate PACA claimants to the greatest extent possible.  Finch and

Honeycutt have now faithfully managed the accounts receivable, and did in fact employ a CPA particularly to assure that the PACA claimants were treated correctly as required by Statute, with the funds available for payment, prorated as appropriate under the Statute.  Having now exhausted those funds, they themselves did contribute personal funds (see Hearing Transcript at page 55, lines 2 through 10 and page 57, lines 3 through 11) to the survival of the business enterprise as far as that would carry them while they sought out third-party suppliers, and specifically another enterprise or persons who could add the financial strength to accommodate the multi-million dollar indebtedness of the Company.  George Finch and Dennis Honeycutt did negotiate so as to maintain the jobs of the Company's continued loyal employees, and did oversee the payment, in whole or in part, of a multitude of PACA claimants.  To all of this, Petitioners provided their uncontroverted testimony.  See Hearing Transcript at page 57, line 12 through page 58, line 17.

A.    **THE ACT VIOLATES FUNDAMENTAL PRINCIPLES OF DUE PROCESS AND IS AN UNCONSTITUTIONAL FORFEITURE IN VIOLATION OF U.S.C.A. TITLE 18, CHAPTER 46, §§ 981, *et seq*.**

There is no question that this Court has previously held that the penalty provisions of PACA do not infringe the rights granted by the Bill of Attainder clause of the Constitution.  *Siegel v. Lyng*, 851 F.2d 412, 416 (D.C. Cir. 1988).  However the basis of this decision and its progeny was that the punishment was

13

considered to be nonpunitive in nature and as a statutory presumption it is
rebuttable in judicial trial.  *Id*.  This conclusion conflicts with the legal definition
of punitive penalties provided by the Supreme Court. *City of Newport v. Fact
Concerts, Inc.*, 453 U.S. 247, 266-67 (1981).  Furthermore, the concept that a
penalty of the nature the Petitioners are facing is nonpunitive seems to indicate that
the Court has reached a conclusion by merely fitting the facts to reach the
conclusion it desires.  The Administrative Law Judge offering his written regret to
the circumstance of his decision (George Finch, U.S.D.A, Chief ALJ'S Decision
and Order, 14) did not consider himself to have the discretionary latitude to
adjudicate differently, perhaps as he actually saw the merits and equity; it is
therefore difficult to categorize what took place as an opportunity to rebut a
statutory presumption at an "adjudicatory proceeding."  *Siegel*, 851 F.2d 416.

Elementary, a punitive statute is defined by Black's Law Dictionary to be "a
law that defines an offense and prescribes its corresponding fine, penalty, or
punishment." Black's Law Dictionary (9th ed. 2009).  Black's Law Dictionary
more importantly notes that penal statutes are to be construed strictly.[4]  *Id*.  The

---

[4] Citing *Henry Campbell Black, Handbook on the Construction and
Interpretation of the Laws 287 (1896)* ("It is a familiar and well-settled rule that
penal statutes are to be construed strictly, and not extended by implications,
intendments, analogies, or equitable considerations. Thus, an offense cannot be
created or inferred by vague implications. And a court cannot create a penalty by
construction, but must avoid it by construction unless it is brought within the letter
and the necessary meaning of the act creating it").

Supreme Court expands on this definition by insisting that, "punitive damages by definition are not intended to compensate the injured party, but rather to punish [those] whose wrongful action was *intentional* or *malicious*, and to deter [that actor] and others from similar extreme conduct." [*emphasis added*]   *City of Newport*, 453 U.S. 266-67.  However, this court has defined PACA punishments as nonpunitive while at the same time referring to those same punishments as "warranted in order to deter such conduct."  *Coosemans Specialties, Inc. v. Dep't of Agric.*, 482 F.3d 560, 567 (D.C. Cir. 2007); *Siegel*, 851 F.2d 416. This Court's definition of a nonpunitive punishment is inconsistent with the Supreme Court's definition of the same.  These Petitioners are burdened with the unsurmountable obligation to repay the non-dischargeable debt for which they became liable through the punishment they were assessed.  Not only are these Petitioners assessed the damages of millions of dollars in unpaid produce, a non-dischargeable debt, but the source of their livelihood for over 25 years, namely their license issued by the Secretary of Agriculture, is suspended, and with it their ability to earn a living and repay any of the debt. Furthermore, at an advanced age Petitioners must seek new careers, yet the punishment is treated as if it were merely an administrative form of enforcement, rather than what actually is, a counter-productive and punitive seizure of property rights; in this instance justice must truly be "blind" and not as intended by the original framers.  This is a

punitive statute meant to punish and deter others from the wrongful conduct, or alternatively, placing the burden of oversight and responsibility for an unduly regulatory plan, irrespective of whether the aggrieved parties are culpable or even in a position to have discovered, prevented, and/or avoided the wrongful conduct, under the undisputed definition of being "responsibly connected" to the offending company.

It is therefore no surprise that Chief Administrative Law Judge (hereinafter Chief ALJ) Peter Davenport noted his empathy for Petitioners, "both of whom demonstrated themselves to be honest and well intentioned men who were victims themselves and who did not personally gain from the situation they found themselves in…"  George Finch, U.S.D.A, Chief ALJ'S Decision and Order, 14. Chief ALJ Davenport believed his hands to be tied by the law as it is written. However, this Honorable Court now has the opportunity to rectify the punitive and unconstitutional punishment assessed on Petitioners and to allow the Petitioners who were "victims" to continue their livelihood.  The punitive assessment is actually unlimited, but only to the extent of the size of the PACA debt to the unpaid produce suppliers.  If not, "the innocent investor/shareholder is branded with guilt purely on the basis of association, a circumstance which I thought was clearly not acceptable as a basis for fixing responsibility." *Hawkins v. Agric. Mktg.*

16

*Serv., Dep't of Agric.*, *U.S.*, 10 F.3d 1125, 1135 (5th Cir. 1993) (DeMoss, J., concurring).

This Court's previous decision in *Siegel* concluded that the Bill of Attainder clause is not violated by PACA punishments in circumstances such as the case at bar, and then began a process of fitting the facts to meet the desired conclusion. *Siegel*, 852. F.2d 416. As previously discussed in this section, this punishment is indeed punitive in nature and the Petitioners were in actuality not given an opportunity to rebut the statutory presumption as even with clear proof of a lack of involvement or knowledge of any PACA violations taking place, they were still adjudicated to be responsible. To suggest that what took place before ALJ Davenport was anything other than a formal hearing to assess punishment is an injustice to Petitioners. The PACA statutes and punishment provisions are punitive in nature and statutorily presume guilt of Petitioners without any substantive opportunity rebut the statutory presumption. Therefore, the PACA provision as administered by the Department of Agriculture is an infringement of the Bill of Attainder clause and should be declared unconstitutional by this Court.

One might argue that removal is consistent with reasonable regulatory action in the control of other professions or industries, however here we have the added issue of removal of one's licenses when no culpability exists. This is layered upon the contemporaneous assessment of individual and personal liability for a

17

corporate debt not otherwise authorized by statute or case precedent. The corporate veil has been pierced without any "fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S. Ct. 1655, 1661, 155 L. Ed. 2d 643 (2003). Even if the Petitioners were to be held personally responsible for corporate debt, the punitive assessment of such amount is an affront to due process and is an unconstitutionally excessive award that deprives Petitioners of the right to due process.. The Supreme Court has set forth three criteria to determine whether such punitive damages are in fact excessive "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409, 123 S. Ct. 1513, 1515, 155 L. Ed. 2d 585 (2003). (These factors are a refinement of the *Gore* case that referred to factor "(1)" as "the most important indicium of the reasonableness of a punitive damages award." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 1599, 134 L. Ed. 2d 809 (1996)). In Campbell, the court has further refined the first factor into five sub-factors including, whether harm was physical or economic, whether the conduct showed a disregard of safety to others, whether the target was financially vulnerable, whether the conduct was repeated or just an

18

isolated incident and whether the harm resulted from trickery or malice and not an accident. *Campbell*, 538 U.S. at 419. In applying these factors to the case before this court, the harm, if any, caused by Petitioners, was economic and not a physical harm, did not show a disregard of safety to others, the target was not inherently financially vulnerable, was not a product of any conduct on the part of Petitioners and was not a result of trickery or malice by Petitioners. Therefore under the sub-factors of the first factor it would be impossible to find that Petitioners conduct was reprehensible.  The second factor requires a comparison of the amount for which Petitioners are personally liable against (i.e. the amount owed by Third Coast Produce to producers of produce) the punitive nature of the loss of license and the transfer of liability from Third Coast Produce to Petitioners personally. Petitioners are not personally liable for any amount, and therefore any damage assessed against Petitioners was inherently punitive. Therefore the disparity between the harm caused by Petitioners (which is zero) and that for which they are held responsible results in a disparate and excessive punitive penalty. The third factor looks at the relevant civil sanctions amount in comparison to the amount of punitive damages. While the civil punitive penalty established by PACA has no limit, the punitive penalty assessed by the ALJ far outweighs the actual loss caused by Petitioners. Petitioners were not ever personally liable for the payments due to the producers of produce, Third Coast Produce was the responsible party.

Therefore the assessment's disproportionate and excessive punishment of Petitioners is unconstitutionally excessive and violates the intent of PACA, especially in light of the 1995 Amendment to the Act.

The 1995 Amendment to the Act was made with the intent of avoiding penalties upon non-culpable parties. The following is a quote from Secretary of Agriculture Orville Freeman at Hearings on H.R. 5023 before the Subcommittee on Domestic Marketing of the House Committee on Agriculture, 87th Con., 1st Sess., ser. P, at 4 (1961) about not intending to punish non-culpable parties and when he spoke before Congress. "We do not find in this history a clear purpose to fashion what in the Secretary's view was an irrebuttable presumption of responsible connection with an organizational licensee merely from officership in the organization." Secretary Freeman did not ask for such a presumption, and the House Committee on Agriculture stated "As the single objection of section 1(9), the provision of a definition to uniform interpretations of 'responsibly connected', as distinguished from an effort to absolutely bar inquiry as to whether one who satisfied the definition was really 'responsibly connected' with an offending licensee." *Quinn v. Butz*, 510 F.2d 743 (D.C. Cir. 1975).

The Amendment speaks to the conjunctive requirements of Perishable Agricultural Commodities Act at 7 U.S.C. § 499a(b)(9): (1) The term "responsibly connected" means affiliated or connected with a commission merchant, dealer, or

20

broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association; <u>and</u> (2) A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of this chapter and that the person either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license or was not an owner of the violating licensee or entity subject to license which was the alter ego of its owners.

Still, were one to be required to show in all instances that he or she were a nominal officer or director, the non-culpable party would not have the opportunity to address whether or not he or she were a participant in the circumstances which caused the defaulted payment and breach of the Act such as to subject them to the penalties thereof.[5]

Judicial construction of forfeiture provisions of the United States Code have long recognized an innocent owner defense.  It is an extended leap of logic or of law under the Act to include the innocent officer or director likewise a stranger to the culpable conduct.  See, for instance, where in an *in rem* civil forfeiture action, a stipulation between the government and claimants that claimants were innocent

---

[5] The Act penalizes by prohibiting working for a licensed produce distributor which is an offending company, and subjecting principals (officers and directors) to personal liability for the debt (in this case millions of dollars which are apparently not dischargeable in bankruptcy proceedings).

owners of the defendant property was sufficient to defeat the government's forfeiture claim. *U.S. v. $2,350,000.00 In Lieu of One Parcel of Property Located at 895 Lake Avenue Greenwich, Connecticut*, 718 F. Supp. 2d 215 (D. Conn. 2010). The Courts have determined to require evidence supporting a finding of a nexus between the circumstances of default and the complaining party and thus, for example, defendant real property has been subject to default civil forfeiture judgment, where the perpetrator of an investment fraud fleeced numerous investors of millions of dollars, and a portion of those fraud proceeds were traced directly to the purchase of the defendant real property. The real property itself was purchased as a part of a large money laundering conspiracy, and the real property was derived not just from investment fraud proceeds, but also from false statements made in a loan application used to secure the financing to purchase the property. *U.S. v. Real Property Located at 730 Glen-Mady Way, Folsom, Sacramento County, CA*, 590 F. Supp. 2d 1295 (E.D.Cal. 2008).

In this vein, *Taylor v. U.S. Dept. of Agric.*, 636 F.3d 608 (D.C. Cir. 2011), what had been the nexus test under PACA, the *Taylor* Court on appeal abandoned this approach to in turn defer to the Commissioner's Court for its determination of a viable standard on remand. In a less than well-reasoned nor enlightening but superficial determination on remand, the Commissioner's Court turned only to the dictionary definition of "nominal" giving strict construction to the first provision of

22

the two (2) conjunctive requirements by Amendment.  Thus, were one not to meet the dictionary definition of "nominal," generally speaking, not even on an *ad hoc*, case specific test under the specific circumstances of default, a principal is then subjected to penalties of the Act whether or not culpable.  Both conjunctive requirements need be satisfied with the amendment of the Act.  One's right to work in the industry is forfeited for the prescribed period and he or she is, as well, burdened with the liability for the debt in default by the operating entity, irrespective of other principles of law that would contrarily define, as well as limit, that liability.

Although the concepts of fundamental principles of due process will be addressed in the subsequent article, with more particularity, Petitioners call to this Court's attention the fact that Congress has addressed a civil forfeiture of property under specified statutes as being subject to procedure and process.  Cases under Article U.S.C.A. Title 18, Chapter 46, §§ 981, *et seq*., have been consistent in requiring a nexus to the offending circumstances for a party to be required to forfeit his or her property.  See *U.S. v. $2,350,000.00,* 718 F. Supp. 2d 215.  The Article addresses minimum standards for civil forfeiture of property in connection with a perpetration of a criminal act.  The forfeiture provisions to which it refers are therein enumerated, not including PACA.  PACA is not contemplated, and yet we have a forfeiture not even involving criminal conduct nor legislated as such, but

23

which forfeiture is allowed without the same protections where the offensive behavior is of a lesser, non-criminal standard. The judiciary cannot ignore the taking of one's livelihood as a trivial pursuit, not subject to constitutional limitations; the right to work should contemplate the concept as a <u>fundamental right</u>, <u>if not an obligation</u>, to the service of our society, Country, and way of life. Petitioners, being each approximately 60-years of age, having developed industry relations over their entire work career, having educated themselves to the industry for that period of time, and providing honorable and productive employment to dozens of others dependent upon their continued industry participation, would otherwise be relegated to seeking employment of substantial lesser value without the opportunity for equivalent recompense; such is the forfeiture of their property rights. See also *George Steinberg & Son, Inc. v. Butz*, 491 F.2d 988 (1974). In the trial of this matter, the Administrative Judge referred to the abandonment of the prior test of nexus (the *Taylor* case) and, on remand, the Administrative Court having gone to an artificial definition of what is a "nominal " officer or director. This superficial test showcases the issue of an unconstitutional taking of property by placing the burden of debt and obligation of payment upon the officer or director for non-culpable conduct without a trial as to their involvement in the subject transaction(s). If we apply the standards of interpretation of competing Acts and divergent law, we find the forfeiture Act speaking to specific statutes not

including PACA, but purporting to address forfeiture under Federal law.  The Act did not include PACA, and so we are left with the obvious intent of Congress to approach what is clearly a forfeiture under Federal law where PACA might not have been heretofore reasonably construed or recognized as a forfeiture statute. Nevertheless, that it is, the statute, irrespective of Judge King's opinion in *Hawkins*, does forfeit one's livelihood; but if the *Hawkins* opinion stands as precedent, then it yet does not address the forfeiture by imposition of liability without the due process issue having been satisfied.   We find no less constitutionally compliant the enforceability of employment limitations in rulings of the U.S. Court of Appeals, District of Columbia Circuit, as represented by *BellSouth Corp. v. F.C.C.*, 162 F.3d 678 (D.C. Cir. 1998).   But again, this Constitutional construction was limited to imposing employment restrictions, not to a taking of property as such without due process.  The foregoing demonstrates a definitive departure from constitutional mandates of due process, prohibition of bill of attainder and as well presumption of innocence.  The Seventh Amendment provides for the preservation of right to trial by jury in, as stated, controversies exceeding twenty dollars ($20.00) in value, and the presumption of innocence spoken "that every man is presumed to be innocent until his guilt is proved beyond a reasonable doubt."  *Coffin v. United States*, 156 U.S. 432, 459, 15 S. Ct. 394, 405, 39 L. Ed. 481 (1895) (in reference to criminal proceedings).  Addressing the

bill of attainder issue, this, the concept of special legislative act prescribing punishment, without a trial, for a specific person or group is prohibited by the U.S. Constitution Art. I, § 9, cl. 3; Art. I, § 10, cl. 1.  The constitutional context is "no bill of attainder or *ex post facto* Law shall be passed.  U.S. Const. Art. I, § 9, cl. 3. The argument stands as well that in this instance, Congress has violated the opportunity for redress of grievance by the wording of the Statute having prevented the defense of non-culpability, and having done so without due process in violation of the Fifth Amended prohibition of depriving life, liberty, or property, without due process.  This last deprivation following into the second issue, B below, as to overbreadth.

**B.     THE ACT IS UNCONSTITUTIONALLY OVERBROAD FOR THE REASON THAT IT PENALIZES VIRTUOUS NON-CULPABLE CONDUCT AS IF IT WERE THE CONTRARY**

First, under the scope of the *Coosemans Specialties, Inc.* case the Court focused upon the PACA amendment that qualified the definition of "responsibly connected" such that "A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of this chapter <u>and</u> [emphasis added] that the person either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license or was not an owner of a violating licensee or entity subject to license or was not an owner

of a violating licensee or entity subject to license which was the alter ego of its owners." *Coosemans Specialties, Inc. v. Dep't of Agric.*, 482 F.3d 560, 563, 375 U.S. App. D.C. 468, 477 (2007). By application of that principle, the persons who would be claimed to be culpable were not in fact responsible for the specific violation and not involved in the activity resulting in the violation of the Act. Again construing the amendment to the Perishable Agricultural Commodity's Act (PACA), *Norinsberg v. U.S. Dept. of Agriculture*, 162 F.3d 1194, 333 U.S. App. D.C. 287 (1998), observed that the amendment was ambiguous as to when a nominal partner, officer, director or shareholder of a violator PACA was "actively involved" in a violation so as to preclude employment by commissioned merchant, dealer, or broker; the Department of Agriculture was required to articulate a standard; Agriculture's argument that each case required a fact specific determination did not excuse its failure to provide any standard. The conclusion was that determination and application of penalties under the Act need to be subject to an ad hoc determination, not by "broad strokes," but by detailed investigation of each factual premise; "…the proper course, one that we follow today, is to remand so as to afford the agency and opportunity to set forth its view in a manner that will allow judicial review." Still, the later case was not at odds with the first and the two together stand for the principle that a mechanical definition of responsible persons alone does not conclude the responsibility of the

27

officers and directors of the offending company; more significantly, it is essential to determine actual involvement of the principals of the company in the activity which lead to a failure of payment/default.  Still, under the standard of the two cases being one first focused upon the activities of individuals and the second upon their position within the organization relative to events that lead to the violation of PACA, either standard leads to an unavoidable conclusion that Dennis Honeycutt and George Finch cannot be considered culpable parties under the Act, but the Act on its face would have it otherwise.

The evidence in the previous proceedings revealed that these Petitioners neither benefited from nor caused the failure of payment, the failure of full payment by the Company was not the willful, flagrant or repeated violation based upon any wrongdoing or failure to act on the part of the principals Finch and Honeycutt, and that the failure to pay was not from a common design or malfeasance on the part of these remaining principals of the Company, Finch and Honeycutt.   See Hearing Transcript per citations made herein.   Finch and Honeycutt made valiant efforts to preserve the Company, but could not do so under the limitations of the embezzled capital and the absence of inventory which, according to the books and records of the Company, should have been and were reported to have been fully and reasonably accounted.  See Hearing Transcript per citations herein made.   Finch and Honeycutt were subsequently employed on

28

behalf of Third Coast Fresh Distribution, LLC to preserve their livelihood, and yet without any culpability for the failure to pay for any prior commodities. Third Coast Fresh Distribution, LLC is unrelated to the enterprise known as Third Coast Produce Company, Ltd. (now known as TCP Ventures, Ltd.), albeit performing substantially the same service in the same community. See Hearing Transcript citations referenced above.

Thus, although each, George Finch and Dennis Honeycutt, may generally fall within the definition of "responsibly connected," these individuals were not responsibly connected for purposes of being actively involved in the business activities resulting in a violation of the Act, to be proven so by a preponderance of the credible evidence, **and that in this instance** they were nominal partner, offer, director, or shareholder, not being involved in that activity which led to the failure of payment.

In the Fifth Circuit Court of Appeals, Circuit Judge DeMoss wrote in his specially concurring opinion the following:

> "I concur with in the reasoning and result of Judge King's well-crafted opinion. We have simply said that the law is what Congress says is the law. However, on rare occasions, in the words of Mr. Bumble in Charles Dickens' Oliver Twist, "... the law is a[n] ass," [*emphasis added*] and this is one of those occasions. To say that a person is "responsibly connected" to an action of a corporation simply by reason of being a minority shareholder of that corporation, flies in the face of both logic and reality. I always thought it was hornbook law that a shareholder, even a majority shareholder, was not responsible for the debts or torts or criminal conduct of a corporation,

simply by reason of being such shareholder. If the public policy behind PACA (as indicated by the quotation from the House report in Judge King's opinion) is to require licensing for those who carry on a business in perishable agricultural commodities, and to deny such licenses "to those whose business tactics disqualify them," should not the law focus on the perpetrators of the unacceptable business tactics? If not, the innocent investor/shareholder is branded with guilt purely on the basis of association, a circumstance which I thought was clearly not acceptable as a basis for fixing responsibility. Consequently, I write this special concurrence with the hope that somewhere in the Department of Agriculture there is an administrator of this Act with the courage to suggest to Congress that the definition of "responsibly connected" should be amended by deleting the words "holder of more than 10 percent of the outstanding stock of a corporation."

*Hawkins*, 10 F.3d 1135.

In this instance, Judge DeMoss refers to "hornbook law" acknowledging that a shareholder is not, by reason of his simply being a shareholder, responsible for the debts or torts or criminal conduct of the corporation. It is no less "hornbook law" that officers and directors are not responsible for the debts or torts or criminal conduct of a corporation simply by being an officer or director, absent that party's participation in the offending transaction (not having occurred in this case) (*e.g*., *Matthews v. Bankcorpsouth Bank*, Not Reported in F. Supp. 2d 2010 WL 797790, M.D.La., March 01, 2010 (NO. CIV.A. 09-910-JJB).

PACA is explicit: If a person falls within one of the three enumerated categories, he is responsibly connected. The statute does not contemplate a defense that allows a person to show that even though he fits into one of the three

categories, he never had enough actual authority or opportunity to be considered culpably responsibly connected. *Hawkins*, 10 F.3d at 1130. As in the case at hand, the petitioner in *Hawkins* admitted his ownership of that percentage of stock in the relevant business enterprise which would deem him "responsibly connected," just as Petitioners in this case have stipulated to their being officers or directors, technically so, at the time of the default in payment. The petitioner in *Hawkins* asserted issues of equal protection and due process although distinguishable from those in this case. True, *Hawkins*' argument was not a novel one as determined by the U.S. 5th Circuit Court of Appeals. These issues of due process and equal protection are thus distinguishable from the *Hawkins* case as addressed by the primary opinion drafted by Circuit Judge King. This *Hawkins* case clearly construed the due process issue, which is actually that which is framed among the issues here. Quoting *Weinberger v. Salfi*, 422 U.S. 749, 777, 95 S. Ct. 2457, 2472, 45 L. Ed. 2d 522 (1975):

> "The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the apparent imprecision of a prophylactic rule."

No matter how articulate and pragmatic this analysis may be, just as Judge DeMoss observes, it is wrong. Where in American jurisprudence and constitutional analysis have we abandoned principle to allow that we sacrifice a

31

few for the benefit of more (distinguished from the line of cases construing "suspect groups")?  Do we not adhere to the principle that the foundation of liberty is the impartial administration of justice?  Constitutional law has predicated itself upon protection against injustices to a minority, irrespective of benefit to the majority.  It is quite surprising that this 5th Circuit Court would sacrifice the non-culpable, law abiding parties and sacrifice them upon the alter of what is perceived as a larger expedient interest.  The Act not only confiscates the right of Petitioners to do business in their chosen profession, but also makes them liable for, in this case, millions of dollars of liability for the conduct of another party, contrary to long-standing and broad-based "hornbook law."   The *Hawkins* opinion emphasizes "… that the Constitution does not guarantee an *unrestricted* privilege to engage in a particular professional or a privilege to conduct a business as one pleases."  However, the Constitution does, as does the United States Code, protect against seizure of property without due process.  The statutory determination of "responsibly connected" imposed that liability by the mere definition of an officer or director, ignoring basic legal principles of liability, and without the opportunity even to rebut the concept of culpability where the designation of officer or director alone would maintain their liability as provided by the Act.  Judge DeMoss did concur with Judge King's "well-crafted opinion."   Although, irrespective of however well-crafted the opinion is, it did not address this taking of property as

32

such without due process.  To be dismissive as to one having chosen their profession within an industry subject to this broad-based Act designed to control that industry, exemplifies the fact of inconsistency.  Prior cases have concluded that if you chose the profession knowing the controls/penalties of the Act, you submit to its enforcement irrespective of an issue of unconstitutionality; this is a false platform to support an otherwise unconstitutional act.

But as well intentioned as Justice DeMoss' concurring opinion may have been, the resolution he proposes would have the Department of Agriculture ignore the Act as it is written.  Perhaps, if not declared unconstitutional for any one or more of the reasons argued here, then the Act should be rewritten or amended, if not re-read, to a standard holding accountable those who are acting, at all relevant times as an officer or director, and whose conduct, as well, is chargeable, or violative of the Act as it otherwise expresses.  Not only does such a standard address and resolve all constitutional issues, but also, allows the Department to accomplish the goal of the Act protecting the industry.

What is most egregious about the Act, defying all sense of justice and fair play and shining a spotlight upon the unconstitutional deprivation of property is the imposition of the penalty of denying one his livelihood as if to say it is just one's chosen line of work rather than a lifetime of sweat and development of one's self and one's relationships in business; but, to concurrently impose upon the same

33

individual the liability for the subject debt is proverbial insult upon injury, making all the more obvious the shortsighted draft of the Act and the farsighted expectation of judicial enforcement.

The *Norinsberg* court declared PACA's construct is one allowing the agency [Department of Agriculture] the opportunity to exercise, and it does exercise, interpretation "based on a permissible construction of the statute" and that it is not ambiguous. *Norinsberg*, 162 F.3d 1194  However, having then determined that the statute is not ambiguous as the *Norinsberg* Court did, and determining also that the agency reasonably construed the statute, still ignored the fact of its unconstitutional penalty construct. *Id.*; See also *BellSouth Corp. v. F.C.C.*, 162 F.3d 678 (1998) (where reference was made to the Supreme Court that it has "… consistently looked to non-punitive purposes when assessing whether a statute inflicts punishment.").   As early as 1889, the Court recognized that even though employment bars were considered punitive in *Cummings*[6] and *Garland*[7], a law that imposed certain requirements on individuals before they could practice medicine did not constitute a bill of attainder.  See *Dent v. West Virginia*, 129 U.S. 114, 9 S. Ct. 231, 32 L. Ed. 623 (1889). The Court further observed that it "… has had occasion to determine whether certain legislation constituted forbidden punishment

---

[6] *Cummings v. Missouri*, 71 U.S. 277, 18 L. Ed. 356 (1866).

[7] *Ex parte Garland*, 71 U.S. 333, 18 L. Ed. 366 (1866).

or legitimate, nonpunitive regulation.  In *Siegel*, Siegel had been the President, Director, and majority shareholder of a company that was cited for flagrant and repeated violations of the Perishable Agricultural Commodities Act ("PACA"). See *Siegel*, 851 F.2d at 413.  Under that Act, someone who was formerly "responsibly connected" with a violator of the Act was barred from employment with any other licensee under the Act for one year.  See *id*. at 414-15.  The court found that this prohibition did not inflict "punishment" under the bill of attainder clause, see *id*. at 417, because there were legitimate justifications for the employment bar.  Thus, first the courts conclude that licensing one's profession is no different from denying its continued practice once having been obtained.  We are led to conclude that taking one's profession is ephemeral and, as well, not a seizing of property, *per se*.  And, additionally, we are expected to uphold constitutionality upon the belief that where the Act includes punishment as such, is emphatically not punishment.  It is significant to note that the Act yet allows for a flagrant violator to return to the industry after the expiration of his period of expulsion or to "bond around" his expulsion; does this not expose the public to the same "offense" committed year(s) earlier – what public protection is then provided?

The Court recently echoed Congress' express purpose behind the PACA enforcement regime, including the employment restrictions:  namely, that the Act's

"special sanctions against dishonest or unreliable dealing … help instill confidence in parties dealing with each other on short notice, across state lines and at long distances …." *Veg-Mix, Inc. v. United Sates Dep't of Agric.*, 832 F.2d 601, 604 (D.C. Cir. 1987).  This legislative and executive resolve to guarantee that PACA transactions by firms employing persons "responsibly connected" to discipline licensees be conducted with easy-to-monitor, scrupulous compliance with the Act is sample justification for the temporary employment bar.  However, this and such other cases did not contemplate the Act punishing those other than who are "dishonest or unreliably dealing."  *Kleiman & Hochberg, Inc. v. U.S. Dept. of Agriculture*, 49 F.3d 681 (2007).  By doing so, the Act is now punishing non-punishable behavior and is therefore outside the intent of the Act and its constitutional provisions.    Thus, under the facts and circumstances, all distinguishable from prior common law, *e.g.*, *Siegel v. Lyng*, the legislation in question here, determines guilt and inflicts punishment upon an identifiable individual without provision for the protections of a judicial trial – hence their "guilt by association."   We need only look at the unyielding and minimal requirements of acting as an officer or director of the offending company and the forfeiture of right to employment.  As developed through the body of case law to which *Siegel* refers, "the question …. is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes

36

about as a relevant incident to a regulation of a present situation …"  Here, the Court determined that "…PACA employment restrictions are reasonably regulatory/enforcement scheme, hence, escape Bill of Attainder prohibition." Under the facts of this case, the Act would sacrifice non-punishable behavior for the sake of that which is.

If indeed there were justification in the Act for the "greater good" or "an enforcement scheme" legislated to save money and protect a threatened class, by placing the burden on another class, this too falls short in justifying an otherwise unconstitutional act.  This and other prior cases are dismissive of the "loss of a job," declaring it less than a penalty; this is a simplistic and superficial reasoning, suggesting that a choice of another vocation would suffice to one approaching his retirement years, having developed industry knowledge, relationships, and a certain level of competence and compensation not remedied by a mere choice of another job.  Tell that aggrieved person he has not been penalized by the Act, particularly if he were an officer or director and yet not participating in the circumstances that resulted in a default of the Act.

It is intellectually dishonest to suggest that an Act which penalizes the nonculpable with the culpable is in harmony with due process and justice intended by the Constitution.

C.  **PETITIONERS HAVE EACH PROVEN, BY UNCONTROVERTED EVIDENCE, THAT THE CIRCUMSTANCES AND EVENTS CAUSING AND RESULTING IN THE DEFAULT OF PAYMENT UNDER THE ACT, AS AMENDED, TO BE CONCLUDED BY THE COURT TO BE THE SOLE, INDEPENDENT ACT OF A THIRD-PARTY OFFICER/DIRECTOR OF THE COMPANY FROM WHICH PETITIONERS DID NOT PROFIT OR BENEFIT, AND IN WHICH PETITIONERS DID NOT PARTICIPATE, WHERE THE CONDUCT OF PETITIONERS WAS NOT CULPABLE WITHIN THE DECLARED INTENT OF THE ACT, AS AMENDED; THESE PRINCIPALS COULD ONLY HAVE BEEN NOMINAL OFFICERS OR DIRECTORS, viz-a-viz THE TRANSACTION CAUSING THE DEFAULT IN PAYMENT UNDER PACA**

As to the circumstances and events causing and resulting in the default of payment under the Act, and as addressed by this Section C, where the officers and directors did not directly participate, benefit, nor in any manner were involved in the transaction causing the default under PACA, how can they be described as anything other than "nominal" officers or directors in those circumstances?  The Act exculpates one acting only as a nominal director, but is silent as to whether that is in an *ad hoc* instance or whether it is for the entire continuum of time in which they carry the designation of officer or director.  It would seem legally absurd and without any foundation or predicate to conclude one to be an officer or director under the definition of "responsibly connected" if he or she only at any given time were acting nominally as such.  Likewise, one cannot impose the shroud of officer or director and thereby impose liability where the individual is not acting as such.  In this case, the facts show that Petitioners were never

consulted nor did they participate in any activity leading to the failure to pay the produce suppliers.  How then can one impose officer and director status and liability upon one not acting as such in that instance?  In support of these legal principles, Petitions refer the Court to the testimony of each Petitioner, George Finch and John D. Honeycutt, the documented undertaking of criminal claims through the appropriate governmental authorities, the testimony and documentation all as are admitted in previous trials in Exhibits PX-1 through PX-12, all being uncontroverted in evidence and in testimony to the facts adduced thereunder or thereby, all supporting the legal positions taken by this Brief.  See particularly Exhibit PX 11 and Hearing Transcript at page 46, lines 11 through 42, page 47, lines 1 through 22, page 48, lines 1 through 22, page 49, lines 1 through 22, page 50, line 1 through 22, page 51, lines 1 through 13.  In essence, we have no standard of a nexus now, as we see in *Taylor* on remand, and yet we can impose or superimpose issues of constitutionality so as to clarify the Act which does not otherwise address the question of the principals acting more than as a nominal director in the given case or generally to the business of the enterprise.  In this case, Petitioners have stipulated that they were officers and directors of the particular offending business enterprise, Third Coast Produce Company, Ltd. (now known as TCP Ventures, Ltd.), but not to the fact of their involvement or participation in the offending transaction itself, if they can be construed as acting

as officers or directors of the enterprise, *per se* in that transaction, which was *ultra vires* by the third officer.

Cases have construed the punitive nature of PACA to be satisfactorily constitutionally framed with regard to a principal acting as an officer or director, who elects to do so for his chosen occupation, charged with the responsibility of knowing the Act, and his potential responsibility or liability thereunder.  However, this begs the issue.  The reality is that in this case, the property rights that are taken from these Petitioners are taken upon a standard of conduct, non-criminal in nature, as if it were otherwise.  If criminal in nature, the Petitioners would clearly have the protection of the processes of the civil forfeiture statute, holding to a particular standard of a nexus between the conduct of the principals and the wrongful conduct.  In this instance, Petitioners are not even provided the benefit of the standard commensurate with the criminal code, but are subjected to the imposition of personal liability and loss of right to work in their chosen career, all without the due process and standards of the U.S. Criminal Code.  If we are to look simply to what is referred to as hornbook law, we find distinction between punitive and actual damages (by a consensus of consistent published sources, case law, commentary, hornbook definition, as well as dictionary definitions):

> At common law, damages are categorized into compensatory damages and punitive damages.  Compensatory damages are further categorized into special damages, which are economic losses such as loss of earnings, property damage and medical expenses, and general

damages, which are noneconomic damages such as pain and suffering and emotional distress.

Compensatory damages, otherwise called actual damages, are paid to compensate the claimant for loss, injury or harm suffered as a result of (see requirement of causation) another's breach of duty. (*e.g.*, in a negligence claim under tort law). Expectation damages are used in contract law.

*General damages*, sometimes styled hedonic damages, compensate the claimant for the non-monetary aspects of the specific harm suffered. This is usually termed 'pain, suffering and loss of amenity'.

Speculative damages are damages that have not yet occurred, but the plaintiff expects them to. Typically, these damages cannot be recovered unless the plaintiff can prove that they are reasonably likely to occur.

Special damages are sometimes divided into incidental damages, and consequential damages. Incidental losses include the costs need to remedy problems and put things right. The largest element is likely to be the reinstatement of property damage.

Generally, punitive damages, which are also termed *exemplary damages* in the United Kingdom, are not awarded in order to compensate the plaintiff, but in order to reform or defer the defendant and similar persons from pursuing a course of action such as that which damaged the plaintiff. Punitive damages are awarded only in special cases where conduct was egregiously invidious and are over and above the amount of compensatory damages, such as in the event of malice or intent. Great judicial restraint is expected to be exercised in their application. In the United States punitive damages awards are subject to the limitations imposed by the due process of law clauses in the Fifth and Fourteenth Amendments to the United States Constitution [emphasis added].

However, cases construing the punitive nature of the Act would declare it

not so. See *e.g.*, *Siegel*, 851 F.2d 412. No amount of torture to the language of

these consistent definitions can change the punitive nature of the Act and the fact that in this instance it punishes those who participate in the industry for the acts of a third party for whom one is not otherwise legally responsible. This has been the inclination of the courts to date, but the concept of case law to date is flawed, intellectually and legally disingenuous. Certainly, in this case we find factual distinctions which would actually place Petitioners in a position of alignment with the intent of the Act, that is, the protection of the agricultural producers to the greatest extent of their power and authority. Here, Petitioners, as the Hearing Transcript reveals, did commit their own personal financial resources and did take action for the survival for the Company and the payment of the creditors to the greatest extent possible. This we find in their testimony and of their acts of collection of receivables and apportioning them among the producers, as was their legal responsibility, while actually reducing their salary as much as seventy-five percent (75%), in addition to committing their own personal resources.

We should acknowledge the efficacy of laws and their intended purposes; but the Court should still embrace and adhere to the superior principle of justice, which the Constitution was written to sustain. In the spirit of Judge DeMoss' concurring opinion, let us give intellectual honesty and judicial credibility to these issues, finding the Act unconstitutional as applied in this instance, and thereby giving impetus to Congress for amendment. That amendment could very well

encourage, rather than discourage, conduct exhibited by Petitioners and thereby better protect the industry and serve the original expressed intent of the Act. Petitioners request this court find the application of 7 U.S.C. § 499a unconstitutional as applied to Petitioners, reverse the decision of the Administrative Law Judge, and render judgment in favor of Petitioners.

## **<u>CONCLUSION</u>**

The PACA Statute as it relates to a finding of culpability and assessment of civil penalties based upon the conjunctive requirement in connection with the determination of "responsibly connected" is unconstitutional upon any one or all of the foregoing authorities, as applied to Petitioners, and should be so declared unconstitutional in this application for which Petitioners should be relieved of any and all further response or sanctions under PACA, and in accordance therewith their Petition be sustained.

Respectfully submitted;

SCHLANGER, SILVER, BARG & PAINE, L.L.P.

BY: /s/ *Michael A. Hirsch*
      MICHAEL A. HIRSCH
      Texas Bar No. 09718200
      Federal I.D. No. 7967
      109 North Post Oak Lane, Suite 300
      Houston, Texas 77024
      713/785-1700 (main)
      713/735-8583 (direct)
      713/785-2091 (fax)
      mhirsch@ssbplaw.com (email)

      ATTORNEY FOR PETITIONERS
      GEORGE FINCH AND
      JOHN D. HONEYCUTT

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*10,207*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>November 3, 2014</u>          <u>*/s/ Michael A. Hirsch*          </u>
                                        *Counsel for Petitioners*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 3rd day of November, 2014, I caused this Page

Proof Brief of Appellant to be filed electronically with the Clerk of the Court using

the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

Thomas G. Pulham
U.S. DEPARTMENT OF JUSTICE (DOJ),
CIVIL DIVISION, APPELLATE STAFF
950 Pennsylvania Avenue, NW, Room 7323
Washington, D.C.  20530
(202) 514-4332

Charles E. Spicknall
U.S. DEPARTMENT OF AGRICULTURE (AGRI)
OFFICE OF GENERAL COUNSEL
1400 Independence Avenue, SW, Room 2320
Washington, D.C.  20250
(202) 720-2714

*Counsel for Respondent*

I further certify that on this 3rd day of November, 2014, I caused the

required copies of the Page Proof Brief of Appellant to be hand filed with the Clerk

of the Court.

*/s/ Michael A. Hirsch*
*Counsel for Petitioners*

# ADDENDUM

## TABLE OF CONTENTS

**Page(s)**

7 U.S.C. § 499(a) ...........................................................................................Add. 1

7 U.S.C. 499b(4) ............................................................................................Add. 2

7 U.S.C. § 499d(b) .........................................................................................Add. 3

7 U.S.C. § 499h(b) .........................................................................................Add. 3

18 U.S.C.A. § 981 ..........................................................................................Add. 4

7 C.F.R. §§ 1.130-.151...................................................................................Add. 11

**7 U.S.C. § 499(a)**

**Short title**

This chapter may be cited as the "Perishable Agricultural Commodities Act, 1930".

**(b) Definitions**

For purposes of this chapter:

**(1)**The term "person" includes individuals, partnerships, corporations, and associations.

**(2)**The term "Secretary" means the Secretary of Agriculture.

**(3)**The term "interstate or foreign commerce" means commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the District of Columbia.

**(4)**The term "perishable agricultural commodity"—

**(A)**Means any of the following, whether or not frozen or packed in ice: Fresh fruits and fresh vegetables of every kind and character; and

**(B)**Includes cherries in brine as defined by the Secretary in accordance with trade usages.

**(5)**The term "commission merchant" means any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another.

**(6)**The term "dealer" means any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce, except that

**(A)** no producer shall be considered as a "dealer" in respect to sales of any such commodity of his own raising;

**(B)** no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000; and

**(C)** no person buying any commodity other than potatoes for canning and/or processing within the State where grown shall be considered a "dealer" whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine, within the meaning of paragraph (4) of this section. Any person not considered as a "dealer" under clauses (A), (B), and (C) may elect to secure a license under the provisions of section 499c of this title, and in such case and while the license is in effect such person shall be considered as a "dealer".

**(7)**The term "broker" means any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser, respectively, except that no person shall be deemed to be a "broker" if such person is an independent agent negotiating sales for and on behalf of the vendor and if the only sales of such commodities negotiated by such person are sales of frozen fruits and vegetables having an invoice value not in excess of $230,000 in any calendar year.

**(8)**A transaction in respect of any perishable agricultural commodity shall be considered in interstate or foreign commerce if such commodity is part of that current of commerce usual in the trade in that commodity whereby such commodity and/or the products of such commodity are sent from one State with the expectation that they will end their transit, after purchase, in another, including, in addition to cases within the above general description, all cases where sale is either for shipment to another State, or for processing within the State and the shipment

Add. 1

outside the State of the products resulting from such processing. Commodities normally in such current of commerce shall not be considered out of such commerce through resort being had to any means or device intended to remove transactions in respect thereto from the provisions of this chapter.

**(9)**The term "responsibly connected" means affiliated or connected with a commission merchant, dealer, or broker as

**(A)** partner in a partnership, or

**(B)** officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association. A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of this chapter and that the person either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license or was not an owner of a violating licensee or entity subject to license which was the alter ego of its owners.

**(10)**The terms "employ" and "employment" mean any affiliation of any person with the business operations of a licensee, with or without compensation, including ownership or self-employment.

**(11)**The term "retailer" means a person that is a dealer engaged in the business of selling any perishable agricultural commodity at retail.

**(12)**The term "grocery wholesaler" means a person that is a dealer primarily engaged in the full-line wholesale distribution and resale of grocery and related nonfood items (such as perishable agricultural commodities, dry groceries, general merchandise, meat, poultry, and seafood, and health and beauty care items) to retailers. However, such term does not include a person described in the preceding sentence if the person is primarily engaged in the wholesale distribution and resale of perishable agricultural commodities rather than other grocery and related nonfood items.

**(13)**The term "collateral fees and expenses" means any promotional allowances, rebates, service or materials fees paid or provided, directly or indirectly, in connection with the distribution or marketing of any perishable agricultural commodity.

### 7 U.S.C. 499b(4)

**(4)**For any commission merchant, dealer, or broker to make, for a fraudulent purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity which is received in interstate or foreign commerce by such commission merchant, or bought or sold, or contracted to be bought, sold, or consigned, in such commerce by such dealer, or the purchase or sale of which in such commerce is negotiated by such broker; or to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction; or to fail to maintain the trust as required under section 499e(c) of this title. However, this paragraph shall not be considered to make the good faith offer, solicitation, payment, or receipt of collateral fees and expenses, in and of itself, unlawful under this chapter.

Add. 2

**7 U.S.C. § 499d(b)**

**(b) Refusal of license; grounds**

The Secretary shall refuse to issue a license to an applicant if he finds that the applicant, or any person responsibly connected with the applicant, is prohibited from employment with a licensee under section 499h(b) of this title or is a person who, or is or was responsibly connected with a person who—

**(A)**has had his license revoked under the provisions of section 499h of this title within two years prior to the date of the application or whose license is currently under suspension;

**(B)**within two years prior to the date of application has been found after notice and opportunity for hearing to have committed any flagrant or repeated violation of section 499b of this title, but this provision shall not apply to any case in which the license of the person found to have committed such violation was suspended and the suspension period has expired or is not in effect;

**(C)**within two years prior to the date of the application, has been found guilty in a Federal court of having violated the provisions of sections 491, 493 to 497 of this title, relating to the prevention of destruction and dumping of farm produce; or

**(D)**has failed, except in the case of bankruptcy and subject to his right of appeal under section 499g(c) of this title, to pay any reparation order issued against him within two years prior to the date of the application.

**7 U.S.C. § 499h(b)**

**(b) Unlawful employment of certain persons; restrictions; bond assuring compliance; approval of employment without bond; change in amount of bond; payment of increased amount; penalties**

Except with the approval of the Secretary, no licensee shall employ any person, or any person who is or has been responsibly connected with any person—

**(1)**whose license has been revoked or is currently suspended by order of the Secretary;

**(2)**who has been found after notice and opportunity for hearing to have committed any flagrant or repeated violation of section 499b of this title, but this provision shall not apply to any case in which the license of the person found to have committed such violation was suspended and the suspension period has expired or is not in effect; or

**(3)**against whom there is an unpaid reparation award issued within two years, subject to his right of appeal under section 499g(c) of this title.

The Secretary may approve such employment at any time following nonpayment of a reparation award, or after one year following the revocation or finding of flagrant or repeated violation of section 499b of this title, if the licensee furnishes and maintains a surety bond in form and amount satisfactory to the Secretary as assurance that such licensee's business will be conducted in accordance with this chapter and that the licensee will pay all reparation awards, subject to its right of appeal under section 499g(c) of this title, which may be issued against it in connection with transactions occurring within four years following the approval. The Secretary may approve employment without a surety bond after the expiration of two years from the effective date of the applicable disciplinary order. The Secretary, based on changes in the nature and volume of business conducted by the licensee, may require an increase or authorize a reduction in the amount of the bond. A licensee who is notified by the Secretary to provide a bond in an

increased amount shall do so within a reasonable time to be specified by the Secretary, and if the licensee fails to do so the approval of employment shall automatically terminate. The Secretary may, after thirty days notice and an opportunity for a hearing, suspend or revoke the license of any licensee who, after the date given in such notice, continues to employ any person in violation of this section. The Secretary may extend the period of employment sanction as to a responsibly connected person for an additional one-year period upon the determination that the person has been unlawfully employed as provided in this subsection.

**18 U.S.C.A. § 981**

**(a)**

**(1)**The following property is subject to forfeiture to the United States:

**(A)**Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

**(B)**Any property, real or personal, within the jurisdiction of the United States, constituting, derived from, or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation, or any property used to facilitate such an offense, if the offense—

**(i)**involves trafficking in nuclear, chemical, biological, or radiological weapons technology or material, or the manufacture, importation, sale, or distribution of a controlled substance (as that term is defined for purposes of the Controlled Substances Act), or any other conduct described in section 1956(c)(7)(B);

**(ii)**would be punishable within the jurisdiction of the foreign nation by death or imprisonment for a term exceeding 1 year; and

**(iii)**would be punishable under the laws of the United States by imprisonment for a term exceeding 1 year, if the act or activity constituting the offense had occurred within the jurisdiction of the United States.

**(C)**Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

**(D)**Any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of—

**(i)**section 666(a)(1) (relating to Federal program fraud);

**(ii)**section 1001 (relating to fraud and false statements);

**(iii)**section 1031 (relating to major fraud against the United States);

**(iv)**section 1032 (relating to concealment of assets from conservator or receiver of insured financial institution);

**(v)**section 1341 (relating to mail fraud); or

**(vi)**section 1343 (relating to wire fraud),

if such violation relates to the sale of assets acquired or held by the the [1] Federal Deposit Insurance Corporation, as conservator or receiver for a financial institution, or any other conservator for a financial institution appointed by the Office of the Comptroller of the Currency or the National Credit Union Administration, as conservator or liquidating agent for a financial institution.

**(E)**With respect to an offense listed in subsection (a)(1)(D) committed for the purpose of executing or attempting to execute any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent statements, pretenses, representations or promises, the gross receipts of such an offense shall include all property, real or personal, tangible or intangible, which thereby is obtained, directly or indirectly.

**(F)**Any property, real or personal, which represents or is traceable to the gross proceeds obtained, directly or indirectly, from a violation of—

**(i)**section 511 (altering or removing motor vehicle identification numbers);

**(ii)**section 553 (importing or exporting stolen motor vehicles);

**(iii)**section 2119 (armed robbery of automobiles);

**(iv)**section 2312 (transporting stolen motor vehicles in interstate commerce); or

**(v)**section 2313 (possessing or selling a stolen motor vehicle that has moved in interstate commerce).

**(G)**All assets, foreign or domestic—

**(i)**of any individual, entity, or organization engaged in planning or perpetrating any any [1] Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization;

**(ii)**acquired or maintained by any person with the intent and for the purpose of supporting, planning, conducting, or concealing any Federal crime of terrorism (as defined in section 2332b(g)(5) [2] against the United States, citizens or residents of the United States, or their property;

**(iii)**derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property; or

**(iv)**of any individual, entity, or organization engaged in planning or perpetrating any act of international terrorism (as defined in section 2331) against any international organization (as defined in section 209 of the State Department Basic Authorities Act of 1956 (22 U.S.C. 4309(b)) or against any foreign Government.[3] Where the property sought for forfeiture is located beyond the territorial boundaries of the United States, an act in furtherance of such planning or perpetration must have occurred within the jurisdiction of the United States.

**(H)**Any property, real or personal, involved in a violation or attempted violation, or which constitutes or is derived from proceeds traceable to a violation, of section 2339C of this title.

**(2)**For purposes of paragraph (1), the term "proceeds" is defined as follows:

**(A)**In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

**(B)**In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

Add. 5

**(C)**In cases involving fraud in the process of obtaining a loan or extension of credit, the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim.

**(b)**

**(1)**Except as provided in section 985, any property subject to forfeiture to the United States under subsection (a) may be seized by the Attorney General and, in the case of property involved in a violation investigated by the Secretary of the Treasury or the United States Postal Service, the property may also be seized by the Secretary of the Treasury or the Postal Service, respectively.

**(2)**Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure, except that a seizure may be made without a warrant if—

**(A)**a complaint for forfeiture has been filed in the United States district court and the court issued an arrest warrant in rem pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims;

**(B)**there is probable cause to believe that the property is subject to forfeiture and—

**(i)**the seizure is made pursuant to a lawful arrest or search; or

**(ii)**another exception to the Fourth Amendment warrant requirement would apply; or

**(C)**the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency.

**(3)**Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found, or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement. Any motion for the return of property seized under this section shall be filed in the district court in which the seizure warrant was issued or in the district court for the district in which the property was seized.

**(4)**

**(A)**If any person is arrested or charged in a foreign country in connection with an offense that would give rise to the forfeiture of property in the United States under this section or under the Controlled Substances Act, the Attorney General may apply to any Federal judge or magistrate judge in the district in which the property is located for an ex parte order restraining the property subject to forfeiture for not more than 30 days, except that the time may be extended for good cause shown at a hearing conducted in the manner provided in rule 43(e) of the Federal Rules of Civil Procedure.

**(B)**The application for the restraining order shall set forth the nature and circumstances of the foreign charges and the basis for belief that the person arrested or charged has property in the United States that would be subject to forfeiture, and shall contain a statement that the restraining order is needed to preserve the availability of property for such time as is necessary to receive evidence from the foreign country or elsewhere in support of probable cause for the seizure of the property under this subsection.

**(c)**Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General, the Secretary of the Treasury, or the Postal Service, as the case may be, subject only to the orders and decrees of the court or the official having

jurisdiction thereof. Whenever property is seized under this subsection, the Attorney General, the Secretary of the Treasury, or the Postal Service, as the case may be, may—

**(1)** place the property under seal;

**(2)** remove the property to a place designated by him; or

**(3)** require that the General Services Administration take custody of the property and remove it, if practicable, to an appropriate location for disposition in accordance with law.

**(d)** For purposes of this section, the provisions of the customs laws relating to the seizure, summary and judicial forfeiture, condemnation of property for violation of the customs laws, the disposition of such property or the proceeds from the sale of such property under this section, the remission or mitigation of such forfeitures, and the compromise of claims (19 U.S.C. 1602 et seq.), insofar as they are applicable and not inconsistent with the provisions of this section, shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under this section, except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this section by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, the Secretary of the Treasury, or the Postal Service, as the case may be. The Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to property involved in a judicial forfeiture proceeding.

**(e)** Notwithstanding any other provision of the law, except section 3 of the Anti Drug Abuse Act of 1986, the Attorney General, the Secretary of the Treasury, or the Postal Service, as the case may be, is authorized to retain property forfeited pursuant to this section, or to transfer such property on such terms and conditions as he may determine—

**(1)** to any other Federal agency;

**(2)** to any State or local law enforcement agency which participated directly in any of the acts which led to the seizure or forfeiture of the property;

**(3)** in the case of property referred to in subsection (a)(1)(C), to any Federal financial institution regulatory agency—

**(A)** to reimburse the agency for payments to claimants or creditors of the institution; and

**(B)** to reimburse the insurance fund of the agency for losses suffered by the fund as a result of the receivership or liquidation;

**(4)** in the case of property referred to in subsection (a)(1)(C), upon the order of the appropriate Federal financial institution regulatory agency, to the financial institution as restitution, with the value of the property so transferred to be set off against any amount later recovered by the financial institution as compensatory damages in any State or Federal proceeding;

**(5)** in the case of property referred to in subsection (a)(1)(C), to any Federal financial institution regulatory agency, to the extent of the agency's contribution of resources to, or expenses involved in, the seizure and forfeiture, and the investigation leading directly to the seizure and forfeiture, of such property;

**(6)** as restoration to any victim of the offense giving rise to the forfeiture, including, in the case of a money laundering offense, any offense constituting the underlying specified unlawful activity; or

**(7)** In [3] the case of property referred to in subsection (a)(1)(D), to the Resolution Trust Corporation, the Federal Deposit Insurance Corporation, or any other Federal financial institution regulatory agency (as defined in section 8(e)(7)(D) of the Federal Deposit Insurance Act).

The Attorney General, the Secretary of the Treasury, or the Postal Service, as the case may be, shall ensure the equitable transfer pursuant to paragraph (2) of any forfeited property to the appropriate State or local law enforcement agency so as to reflect generally the contribution of any such agency participating directly in any of the acts which led to the seizure or forfeiture of such property. A decision by the Attorney General, the Secretary of the Treasury, or the Postal Service pursuant to paragraph (2) shall not be subject to review. The United States shall not be liable in any action arising out of the use of any property the custody of which was transferred pursuant to this section to any non-Federal agency. The Attorney General, the Secretary of the Treasury, or the Postal Service may order the discontinuance of any forfeiture proceedings under this section in favor of the institution of forfeiture proceedings by State or local authorities under an appropriate State or local statute. After the filing of a complaint for forfeiture under this section, the Attorney General may seek dismissal of the complaint in favor of forfeiture proceedings under State or local law. Whenever forfeiture proceedings are discontinued by the United States in favor of State or local proceedings, the United States may transfer custody and possession of the seized property to the appropriate State or local official immediately upon the initiation of the proper actions by such officials. Whenever forfeiture proceedings are discontinued by the United States in favor of State or local proceedings, notice shall be sent to all known interested parties advising them of the discontinuance or dismissal. The United States shall not be liable in any action arising out of the seizure, detention, and transfer of seized property to State or local officials. The United States shall not be liable in any action arising out of a transfer under paragraph (3), (4), or (5) of this subsection.

**(f)**All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

**(g)**

**(1)**Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

**(2)**Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that—

**(A)**the claimant is the subject of a related criminal investigation or case;

**(B)**the claimant has standing to assert a claim in the civil forfeiture proceeding; and

**(C)**continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

**(3)**With respect to the impact of civil discovery described in paragraphs (1) and (2), the court may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case. In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so.

**(4)**In this subsection, the terms "related criminal case" and "related criminal investigation" mean an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made. In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.

**(5)**In requesting a stay under paragraph (1), the Government may, in appropriate cases, submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial.

**(6)**Whenever a civil forfeiture proceeding is stayed pursuant to this subsection, the court shall enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect.

**(7)**A determination by the court that the claimant has standing to request a stay pursuant to paragraph (2) shall apply only to this subsection and shall not preclude the Government from objecting to the standing of the claimant by dispositive motion or at the time of trial.

**(h)**In addition to the venue provided for in section 1395 of title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of the property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought.

**(i)**

**(1)**Whenever property is civilly or criminally forfeited under this chapter, the Attorney General or the Secretary of the Treasury, as the case may be, may transfer the forfeited personal property or the proceeds of the sale of any forfeited personal or real property to any foreign country which participated directly or indirectly in the seizure or forfeiture of the property, if such a transfer—

**(A)**has been agreed to by the Secretary of State;

**(B)**is authorized in an international agreement between the United States and the foreign country; and

**(C)**is made to a country which, if applicable, has been certified under section 481(h) [4] of the Foreign Assistance Act of 1961.

A decision by the Attorney General or the Secretary of the Treasury pursuant to this paragraph shall not be subject to review. The foreign country shall, in the event of a transfer of property or proceeds of sale of property under this subsection, bear all expenses incurred by the United States in the seizure, maintenance, inventory, storage, forfeiture, and disposition of the property, and all transfer costs. The payment of all such expenses, and the transfer of assets pursuant to this paragraph, shall be upon such terms and conditions as the Attorney General or the Secretary of the Treasury may, in his discretion, set.

**(2)**The provisions of this section shall not be construed as limiting or superseding any other authority of the United States to provide assistance to a foreign country in obtaining property related to a crime committed in the foreign country, including property which is sought as evidence of a crime committed in the foreign country.

**(3)**A certified order or judgment of forfeiture by a court of competent jurisdiction of a foreign country concerning property which is the subject of forfeiture under this section and was determined by such court to be the type of property described in subsection (a)(1)(B) of this section, and any certified recordings or transcripts of testimony taken in a foreign judicial proceeding concerning such order or judgment of forfeiture, shall be admissible in evidence in a proceeding brought pursuant to this section. Such certified order or judgment of forfeiture, when admitted into evidence, shall constitute probable cause that the property forfeited by such order or judgment of forfeiture is subject to forfeiture under this section and creates a rebuttable presumption of the forfeitability of such property under this section.

**(4)**A certified order or judgment of conviction by a court of competent jurisdiction of a foreign country concerning an unlawful drug activity which gives rise to forfeiture under this section and

Add. 9

any certified recordings or transcripts of testimony taken in a foreign judicial proceeding concerning such order or judgment of conviction shall be admissible in evidence in a proceeding brought pursuant to this section. Such certified order or judgment of conviction, when admitted into evidence, creates a rebuttable presumption that the unlawful drug activity giving rise to forfeiture under this section has occurred.

**(5)**The provisions of paragraphs (3) and (4) of this subsection shall not be construed as limiting the admissibility of any evidence otherwise admissible, nor shall they limit the ability of the United States to establish probable cause that property is subject to forfeiture by any evidence otherwise admissible.

**(j)**For purposes of this section—

**(1)**the term "Attorney General" means the Attorney General or his delegate; and

**(2)**the term "Secretary of the Treasury" means the Secretary of the Treasury or his delegate.

**(k) Interbank Accounts.—**

**(1) In general.—**

**(A) In general.—** For the purpose of a forfeiture under this section or under the Controlled Substances Act (21 U.S.C. 801 et seq.), if funds are deposited into an account at a foreign financial institution (as defined in section 984(c)(2)(A) of this title), and that foreign financial institution (as defined in section 984(c)(2)(A) of this title) has an interbank account in the United States with a covered financial institution (as defined in section 5318(j)(1) of title 31), the funds shall be deemed to have been deposited into the interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant in rem regarding the funds may be served on the covered financial institution, and funds in the interbank account, up to the value of the funds deposited into the account at the foreign financial institution (as defined in section 984(c)(2)(A) of this title), may be restrained, seized, or arrested.

**(B) Authority to suspend.—** The Attorney General, in consultation with the Secretary of the Treasury, may suspend or terminate a forfeiture under this section if the Attorney General determines that a conflict of law exists between the laws of the jurisdiction in which the foreign financial institution (as defined in section 984(c)(2)(A) of this title) is located and the laws of the United States with respect to liabilities arising from the restraint, seizure, or arrest of such funds, and that such suspension or termination would be in the interest of justice and would not harm the national interests of the United States.

**(2) No requirement for government to trace funds.—** If a forfeiture action is brought against funds that are restrained, seized, or arrested under paragraph (1), it shall not be necessary for the Government to establish that the funds are directly traceable to the funds that were deposited into the foreign financial institution (as defined in section 984(c)(2)(A) of this title), nor shall it be necessary for the Government to rely on the application of section 984.

**(3) Claims brought by owner of the funds.—** If a forfeiture action is instituted against funds restrained, seized, or arrested under paragraph (1), the owner of the funds deposited into the account at the foreign financial institution (as defined in section 984(c)(2)(A) of this title) may contest the forfeiture by filing a claim under section 983.

**(4) Definitions.—** For purposes of this subsection, the following definitions shall apply:

**(A) Interbank account.—** The term "interbank account" has the same meaning as in section 984(c)(2)(B).

**(B) Owner.—**

**(i) In general.—** Except as provided in clause (ii), the term "owner"—

**(I)**means the person who was the owner, as that term is defined in section 983(d)(6), of the funds that were deposited into the foreign financial institution (as defined in section 984(c)(2)(A) of this title) at the time such funds were deposited; and

**(II)**does not include either the foreign financial institution (as defined in section 984(c)(2)(A) of this title) or any financial institution acting as an intermediary in the transfer of the funds into the interbank account.

**(ii) Exception.—** The foreign financial institution (as defined in section 984(c)(2)(A) of this title) may be considered the "owner" of the funds (and no other person shall qualify as the owner of such funds) only if—

**(I)**the basis for the forfeiture action is wrongdoing committed by the foreign financial institution (as defined in section 984(c)(2)(A) of this title); or

**(II)**the foreign financial institution (as defined in section 984(c)(2)(A) of this title) establishes, by a preponderance of the evidence, that prior to the restraint, seizure, or arrest of the funds, the foreign financial institution (as defined in section 984(c)(2)(A) of this title) had discharged all or part of its obligation to the prior owner of the funds, in which case the foreign financial institution (as defined in section 984(c)(2)(A) of this title) shall be deemed the owner of the funds to the extent of such discharged obligation.

### 7 C.F.R. §§ 1.130-.151

§ 1.130Meaning of words.

As used in this subpart, words in the singular form shall be deemed to import the plural, and vice versa, as the case may require.

§1.131Scope and applicability of this subpart.

**(a)** The rules of practice in this subpart shall be applicable to all adjudicatory proceedings under the statutory provisions listed below as those provisions have been or may be amended from time to time, [1] except that those rules shall not be applicable to reparation proceedings under section 6(c) of the Perishable Agricultural Commodities Act, 1930. Section 1.26 shall be inapplicable to the proceedings covered by this subpart.

§ 1.132Definitions.

As used in this subpart, the terms as defined in the statute under which the proceeding is conducted and in the regulations, standards, instructions, or orders issued thereunder, shall apply with equal force and effect. In addition and except as may be provided otherwise in this subpart:

*Administrator* means the Administrator of the Agency administering the statute involved, or any officer or employee of the Agency to whom authority has heretofore been delegated, or to whom authority may hereafter be delegated, to act for the Administrator.

*Complainant* means the party instituting the proceeding.

*Complaint* means the formal complaint, order to show cause, or other document by virtue of which a proceeding is instituted.

*Decision* means: (1) The Judge's initial decision made in accordance with the provisions of 5 U.S.C. 556 and 557, and includes the Judge's (i) findings and conclusions and the reasons or basis therefor on all material issues of fact, law or discretion, (ii) order, and (iii) rulings on proposed findings, conclusions and orders submitted by the parties; and

**(2)** The decision and order by the Judicial Officer upon appeal of the Judge's decision.

*Hearing* means that part of the proceeding which involves the submission of evidence before the Judge for the record in the proceeding.

*Hearing Clerk* means the Hearing Clerk, United States Department of Agriculture, Washington, DC 20250.

*Judge* means any Administrative Law Judge appointed pursuant to 5 U.S.C. 3105 and assigned to the proceeding involved.

*Judicial Officer* means an official of the United States Department of Agriculture delegated authority by the Secretary of Agriculture, pursuant to the Act of April 4, 1940 (7 U.S.C. 450c-450g) and Reorganization Plan No. 2 of 1953 (5 U.S.C. App. (1988)), to perform the function involved (§ 2.35(a) of this chapter), or the Secretary of Agriculture if the authority so delegated is exercised by the Secretary.

*Mail* means to deposit an item in the United States Mail with postage affixed and addressed as necessary to cause it to be delivered to the address shown by ordinary mail, or by certified or registered mail if specified.

*Petitioner* means an individual who has filed a petition for review of a determination that the individual is responsibly connected to a licensee within the meaning of 7 U.S.C. 499a(b)(9).

*Re-mail* means to mail by ordinary mail to an address an item that has been returned after being sent to the same address by certified or registered mail.

*Respondent* means the party proceeded against.


§ 1.133 Institution of proceedings.

**(a)** *Submission of information concerning apparent violations.* (1) Any interested person desiring to submit information regarding an apparent violation of any provision of a statute listed in § 1.131 or of any regulation, standard, instruction, or order issued pursuant thereto, may file the information with the Administrator of the agency administering the statute involved in accordance with this section and any applicable statutory or regulation provisions. Such information may be made the basis of any appropriate proceeding covered by the rules in this subpart, or any other appropriate proceeding authorized by the particular statute or the regulations promulgated thereunder.

**(2)** The information may be submitted by telegram, by letter, or by a preliminary statement of facts, setting forth the essential details of the transaction complained of. So far as practicable, the information shall include such of the following items as may be applicable:

**(i)** The name and address of each person and of the agent, if any, representing such person in the transaction involved;

**(ii)** Place where the alleged violation occurred;

**(iii)** Quantity and quality or grade of each kind of product or article involved;

**(iv)** Date of alleged violation;

**(v)** Car initial and number, if carlot;

**(vi)** Shipping and destination points;

**(vii)** If a sale, the date, sale price, and amount actually received;

**(viii)** If a consignment, the date, reported proceeds, gross, net;

**(ix)** Amount of damage claimed, if any;

**(x)** Statement of other material facts, including terms of contract; and

**(xi)** So far as practicable, true copies of all available papers relating to the transaction complained about, including shipping documents, letters, telegrams, invoices, manifests, inspection certificates, accounts of sales and any special contracts or agreements.

**(3)** Upon receipt of the information and supporting evidence, the Administrator shall cause such investigation to be made as, in the opinion of the Administrator, is justified by the facts. If such investigation discloses that no violation of the Act or of the regulations, standards, instructions, or orders issued pursuant thereto, has occurred, no further action shall be taken and the person submitting the information shall be so informed.

**(4)** The person submitting the information shall not be a party to any proceeding which may be instituted as a result thereof and such person shall have no legal status in the proceeding, except as a subpoenaed witness or as a deponent in a deposition taken without expense to such person.

**(b)***Filing of complaint or petition for review.* (1) If there is reason to believe that a person has violated or is violating any provision of a statute listed in § 1.131 or of any regulation, standard, instruction or order issued pursuant thereto, whether based upon information furnished under paragraph (a) of this section or other information, a complaint may be filed with the Hearing Clerk pursuant to these rules.

**(2)** Any person determined by the Chief, PACA Branch, pursuant to §§ 47.47-47.49 of this title to have been responsibly connected within the meaning of 7 U.S.C. 499a(b)(9) to a licensee who is subject or potentially subject to license suspension or revocation as the result of an alleged violation of 7 U.S.C. 499b or 499h(b) or as provided in 7 U.S.C. 499g(d) shall be entitled to institute a proceeding under this section and to have determined the facts with respect to such responsibly connected status by filing with the Hearing Clerk a petition for review of such determination.

**(3)** As provided in 5 U.S.C. 558, in any case, except one of willfulness or one in which public health, interest, or safety otherwise requires, prior to the institution of a formal proceeding which may result in the withdrawal, suspension, or revocation of a "license" as that term is defined in 5 U.S.C. 551(8), the Administrator, in an effort to effect an amicable or informal settlement of the matter, shall give written notice to the person involved of the facts or conduct concerned and shall afford such person an opportunity, within a reasonable time fixed by the Administrator, to demonstrate or achieve compliance with the applicable requirements of the statute, or the regulation, standard, instruction or order promulgated thereunder.

§ 1.134 Docket number.

Each proceeding, immediately following its institution, shall be assigned a docket number by the Hearing Clerk, and thereafter the proceeding shall be referred to by such number.

§ 1.135 Contents of complaint or petition for review.

**(a)***Complaint.* A complaint filed pursuant to § 1.133(b) shall state briefly and clearly the nature of the proceeding, the identification of the complainant and the respondent, the legal authority and jurisdiction under which the proceeding is instituted, the allegations of fact and provisions of law which constitute a basis for the proceeding, and the nature of the relief sought.

**(b)***Petition for review.* The Petition for Review of responsibly connected status shall describe briefly and clearly the determination sought to be reviewed and shall include a brief statement of the factual and legal matters that the petitioner believes warrant the reversal of the determination

§ 1.136 Answer.

**(a)***Filing and service.* Within 20 days after the service of the complaint (within 10 days in a proceeding under section 4(d) of the Perishable Agricultural Commodities Act, 1930), or such other time as may be specified therein, the respondent shall file with the Hearing Clerk an

answer signed by the respondent or the attorney of record in the proceeding. The attorney may file an appearance of record prior to or simultaneously with the filing of the answer. The answer shall be served upon the complainant, and any other party of record, by the Hearing Clerk. As response to a petition for review of responsibly connected status, the Chief, PACA Branch, shall within ten days after being served by the Hearing Clerk with a petition for review, file with the Hearing Clerk a certified copy of the agency record upon which the Chief, PACA Branch, made the determination that the individual was responsibly connected to a licensee under the Perishable Agricultural Commodities Act, 7 U.S.C. 499a*et seq.,* and such agency record shall become part of the record in the review proceeding.

**(b)***Contents.* The answer shall:

**(1)** Clearly admit, deny, or explain each of the allegations of the Complaint and shall clearly set forth any defense asserted by the respondent; or

**(2)** State that the respondent admits all the facts alleged in the complaint; or

**(3)** State that the respondent admits the jurisdictional allegations of the complaint and neither admits nor denies the remaining allegations and consents to the issuance of an order without further procedure.

**(c)***Default.* Failure to file an answer within the time provided under paragraph (a) of this section shall be deemed, for purposes of the proceeding, an admission of the allegations in the Complaint, and failure to deny or otherwise respond to an allegation of the Complaint shall be deemed, for purposes of the proceeding, an admission of said allegation, unless the parties have agreed to a consent decision pursuant to § 1.138.

§ 1.137Amendment of complaint, petition for review, or answer; joinder of related matters.

**(a)***Amendment.* At any time prior to the filing of a motion for a hearing, the complaint, petition for review, answer, or response to petition for review may be amended. Thereafter, such an amendment may be made with consent of the parties, or as authorized by the Judge upon a showing of good cause.

**(b)***Joinder.* The Judge shall consolidate for hearing with any proceeding alleging a violation of the Perishable Agricultural Commodities Act, 7 U.S.C. 499a*et seq.,* any petitions for review of determination of status by the Chief, PACA Branch, that individuals are responsibly connected, within the meaning of 7 U.S.C. 499a(b)(9), to the licensee during the period of the alleged violations. In any case in which there is no pending proceeding alleging a violation of the Perishable Agricultural Commodities Act, 7 U.S.C. 499a*et seq.,* but there have been filed more than one petition for review of determination of responsible connection to the same licensee, such petitions for review shall be consolidated for hearing.

§ 1.138Consent decision.

At any time before the Judge files the decision, the parties may agree to the entry of a consent decision. Such agreement shall be filed with the Hearing Clerk in the form of a decision signed by the parties with appropriate space for signature by the Judge, and shall contain an admission of at least the jurisdictional facts, consent to the issuance of the agreed decision without further procedure and such other admissions or statements as may be agreed between the parties. The Judge shall enter such decision without further procedure, unless an error is apparent on the face of the document. Such decision shall have the same force and effect as a decision issued after full hearing, and shall become final upon issuance to become effective in accordance with the terms of the decision.

§ 1.139 Procedure upon failure to file an answer or admission of facts.

The failure to file an answer, or the admission by the answer of all the material allegations of fact contained in the complaint, shall constitute a waiver of hearing. Upon such admission or failure to file, complainant shall file a proposed decision, along with a motion for the adoption thereof, both of which shall be served upon the respondent by the Hearing Clerk. Within 20 days after service of such motion and proposed decision, the respondent may file with the Hearing Clerk objections thereto. If the Judge finds that meritorious objections have been filed, complainant's Motion shall be denied with supporting reasons. If meritorious objections are not filed, the Judge shall issue a decision without further procedure or hearing. Copies of the decision or denial of complainant's Motion shall be served by the Hearing Clerk upon each of the parties and may be appealed pursuant to § 1.145. Where the decision as proposed by complainant is entered, such decision shall become final and effective without further proceedings 35 days after the date of service thereof upon the respondent, unless there is an appeal to the Judicial Officer by a party to the proceeding pursuant to § 1.145: *Provided, however,* That no decision shall be final for purposes of judicial review except a final decision of the Judicial Officer upon appeal.


§ 1.140 Conferences and procedure.

**(a)** *Purpose and scope.* (1) Upon motion of a party or upon the Judge's own motion, the Judge may direct the parties or their counsel to attend a conference at any reasonable time, prior to or during the course of the hearing, when the Judge finds that the proceeding would be expedited by a conference. Reasonable notice of the time, place, and manner of the conference shall be given. The Judge may order each of the parties to furnish at or subsequent to the conference any or all of the following:

**(i)** An outline of the case or defense;

**(ii)** The legal theories upon which the party will rely;

**(iii)** Copies of or a list of documents which the party anticipates introducing at the hearing; and

**(iv)** A list of anticipated witnesses who will testify on behalf of the party. At the discretion of the party furnishing such list of witnesses, the names of the witnesses need not be furnished if they are otherwise identified in some meaningful way such as a short statement of the type of evidence they will offer.

**(2)** The Judge shall not order any of the foregoing procedures that a party can show is inappropriate or unwarranted under the circumstances of the particular case.

**(3)** At the conference, the following matters shall be considered:

**(i)** The simplification of issues;

**(ii)** The necessity of amendments to pleadings;

**(iii)** The possibility of obtaining stipulations of facts and of the authenticity, accuracy, and admissibility of documents, which will avoid unnecessary proof;

**(iv)** The limitation of the number of expert or other witnesses;

**(v)** Negotiation, compromise, or settlement of issues;

**(vi)** The exchange of copies of proposed exhibits;

**(vii)** The identification of documents or matters of which official notice may be requested;

**(viii)** A schedule to be followed by the parties for completion of the actions decided at the conference; and

**(ix)** Such other matters as may expedite and aid in the disposition of the proceeding.

**(b)** *Reporting.* A conference will not be stenographically reported unless so directed by the Judge.

**(c)***Manner of Conference.* (1) The conference shall be conducted by telephone or correspondence unless the Judge determines that conducting the conference by audio-visual telecommunication:
**(i)** Is necessary to prevent prejudice to a party;
**(ii)** Is necessary because of a disability of any individual expected to participate in the conference; or
**(iii)** Would cost less than conducting the conference by telephone or correspondence. If the Judge determines that a conference conducted by audio-visual telecommunication would measurably increase the United States Department of Agriculture's cost of conducting the conference, the conference shall be conducted by personal attendance of any individual who is expected to participate in the conference, by telephone, or by correspondence.
**(2)** If the conference is not conducted by telephone or correspondence, the conference shall be conducted by audio-visual telecommunication unless the Judge determines that conducting the conference by personal attendance of any individual who is expected to participate in the conference:
**(i)** Is necessary to prevent prejudice to a party;
**(ii)** Is necessary because of a disability of any individual expected to participate in the conference; or
**(iii)** Would cost less than conducting the conference by audio-visual telecommunication.
**(d)***Order.* Actions taken as a result of a conference shall be reduced to a written appropriate order, unless the Judge concludes that a stenographic report shall suffice, or, if the conference takes place within 7 days of the beginning of the hearing, the Judge elects to make a statement on the record at the hearing summarizing the actions taken.
**(e)***Related matters.* Upon motion of a respondent, the Judge may order the attorney for the complainant to produce and permit the respondent to inspect and copy or photograph any relevant written or recorded statements or confessions made by such respondent within the possession, custody or control of the complainant.

§ 1.141Procedure for hearing.
**(a)***Request for hearing.* Any party may request a hearing on the facts by including such request in the complaint or answer, or by a separate request, in writing, filed with the Hearing Clerk within the time in which an answer may be filed. A petition for review shall be deemed a request for a hearing. Failure to request a hearingwithin the time allowed for the filing of the answer shall constitute a waiver of such hearing. Waiver of hearing shall not be deemed to be a waiver of the right to request oral argument before the Judicial Officer upon appeal of the Judge's decision. In the event the respondent denies any material fact and fails to file a timely request for a hearing, the matter may be set down for hearing on motion of the complainant or upon the Judge's own motion.
**(b)***Time, place, and manner.* (1) If any material issue of fact is joined by the pleadings, the Judge, upon motion of any party stating that the matter is at issue and is ready for hearing, shall set a time, place, and manner for hearing as soon as feasible after the motion is filed, with due regard for the public interest and the convenience and necessity of the parties. The Judge shall file with the Hearing Clerk a notice stating the time and place of the hearing. [2] This notice shall state whether the hearing will be conducted by telephone, audio-visual telecommunication, or personal attendance of any individual expected to participate in the hearing. The Judge's determination regarding the manner of the hearing shall be made in accordance with paragraphs (b)(3) and (b)(4) of this section. If any change in the time, place, or manner of the hearing is

Add. 16

made, the Judge shall file with the Hearing Clerk a notice of such change, which notice shall be served upon the parties, unless it is made during the course of an oral hearing and made part of the transcript or recording, or actual notice is given to the parties.

§ 1.142 Post-hearing procedure.

**(a)** *Corrections to transcript or recording.* (1) Within the period of time fixed by the Judge, any party may file a motion proposing corrections to the transcript or recording.

**(2)** Unless a party files such a motion in the manner prescribed, the transcript or recording shall be presumed, except for obvious typographical errors, to be a true, correct, and complete transcript or recording of the testimony given at the hearing and to contain an accurate description or reference to all exhibits received in evidence and made part of the hearing record, and shall be deemed to be certified without further action by the Judge.

**(3)** As soon as practicable after the close of the hearing and after consideration of any timely objections filed as to the transcript or recording, the Judge shall issue an order making any corrections to the transcript or recording which the Judge finds are warranted, which corrections shall be entered onto the original transcript or recording by the Hearing Clerk (without obscuring the original text).

**(b)** *Proposed findings of fact, conclusions, orders, and briefs.* Prior to the Judge's decision, each party shall be afforded a reasonable opportunity to submit for consideration proposed findings of fact, conclusions, order, and brief in support thereof. A copy of each such document filed by a party shall be served upon each of the other parties.

**(c)** *Judge's decision.* (1) The Judge may, upon motion of any party or in his or her own discretion, issue a decision orally at the close of the hearing, or within a reasonable time after the closing of the hearing.

**(2)** If the decision is announced orally, a copy thereof, excerpted from the transcript or recording, shall be furnished to the parties by the Hearing Clerk. Irrespective of the date such copy is mailed, the issuance date of the decision shall be the date the oral decision was announced.

**(3)** If the decision is in writing, it shall be filed with the Hearing Clerk and served upon the parties as provided in § 1.147.

**(4)** The Judge's decision shall become final and effective without further proceedings 35 days after the issuance of the decision, if announced orally at the hearing, or if the decision is in writing, 35 days after the date of service thereof upon the respondent, unless there is an appeal to the Judicial Officer by a party to the proceeding pursuant to § 1.145; *Provided, however,* that no decision shall be final for purposes of judicial review except a final decision of the Judicial Officer upon appeal.

§ 1.143 Motions and requests.

**(a)** *General.* All motions and requests shall be filed with the Hearing Clerk, and served upon all the parties, except (1) requests for extensions of time pursuant to § 1.147, (2) requests for subpoenas pursuant to § 1.149, and (3) motions and requests made on the record during the oral hearing. The Judge shall rule upon all motions and requests filed or made prior to the filing of an appeal of the Judge's decision pursuant to § 1.145, except motions directly relating to the appeal. Thereafter, the Judicial Officer will rule on any motions and requests, as well as the motions directly relating to the appeal.

**(b)** *Motions entertained.* (1) Any motion will be entertained other than a motion to dismiss on the pleading.

**(2)** All motions and request concerning the complaint must be made within the time allowed for filing an answer.

**(c)***Contents.* All written motions and requests shall state the particular order, ruling, or action desired and the grounds therefor.

**(d)***Response to motions and requests.* Within 20 days after service of any written motion or request, or within such shorter or longer period as may be fixed by the Judge or the Judicial Officer, an opposing party may file a response to the motion or request. The other party shall have no right to reply to the response; however, the Judge or the Judicial Officer, in the Judge's or the Judicial Officer's discretion, may order that a reply be filed.

**(e)***Certification to the judicial officer.* The submission or certification of any motion, request, objection, or other question to the Judicial Officer prior to the filing of an appeal pursuant to § 1.145 shall be made by and in the discretion of the Judge. The Judge may either rule upon or certify the motion, request, objection, or other question to the Judicial Officer, but not both.

§ 1.144Judges.

**(a)***Assignment.* No Judge shall be assigned to serve in any proceeding who (1) has any pecuniary interest in any matter or business involved in the proceeding, (2) is related within the third degree by blood or marriage to any party to the proceeding, or (3) has any conflict of interest which might impair the Judge's objectivity in the proceeding.

**(b)***Disqualification of Judge.* (1) Any party to the proceeding may, by motion made to the Judge, request that the Judge withdraw from the proceeding because of an alleged disqualifying reason. Such motion shall set forth with particularity the grounds of alleged disqualification. The Judge may then either rule upon or certify the motion to the Secretary, but not both.

**(2)** A Judge shall withdraw from any proceeding for any reason deemed by the Judge to be disqualifying.

**(c)***Powers.* Subject to review as provided in this subpart, the Judge, in any assigned proceeding, shall have power to:

**(1)** Rule upon motions and requests;

**(2)** Set the time, place, and manner of a conference and the hearing, adjourn the hearing, and change the time, place, and manner of the hearing;

**(3)** Administer oaths and affirmations;

**(4)** Issue subpoenas as authorized by the statute under which the proceeding is conducted, requiring the attendance and testimony of witnesses and the production of books, contracts, papers, and other documentary evidence at the hearing;

**(5)** Summon and examine witnesses and receive evidence at the hearing;

**(6)** Take or order the taking of depositions as authorized under these rules;

**(7)** Admit or exclude evidence;

**(8)** Hear oral argument on facts or law;

**(9)** Require each party to provide all other parties and the Judge with a copy of any exhibit that the party intends to introduce into evidence prior to any hearing to be conducted by telephone or audio-visual telecommunication;

**(10)** Require each party to provide all other parties with a copy of any document that the party intends to use to examine a deponent prior to any deposition to be conducted by telephone or audio-visual telecommunication;

Add. 18

**(11)** Require that any hearing to be conducted by telephone or audio-visual telecommunication be conducted at locations at which the parties and the Judge are able to transmit and receive documents during the hearing;

**(12)** Require that any deposition to be conducted by telephone or audio-visual telecommunication be conducted at locations at which the parties are able to transmit and receive documents during the deposition;

**(13)** Do all acts and take all measures necessary for the maintenance of order, including the exclusion of contumacious counsel or other persons; and

**(14)** Take all other actions authorized under these rules.

**(d)**_Who may act in the absence of the Judge._ In case of the absence of the Judge or the Judge's inability to act, the powers and duties to be performed by the Judge under these rules of practice in connection with any assigned proceeding may, without abatement of the proceeding unless otherwise directed by the Chief Judge, be assigned to any other Judge.


§ 1.145 Appeal to Judicial Officer.

**(a)**_Filing of petition._ Within 30 days after receiving service of the Judge's decision, if the decision is a written decision, or within 30 days after issuance of the Judge's decision, if the decision is an oral decision, a party who disagrees with the decision, any part of the decision, or any ruling by the Judge or who alleges any deprivation of rights, may appeal the decision to the Judicial Officer by filing an appeal petition with the Hearing Clerk. As provided in § 1.141(h)(2), objections regarding evidence or a limitation regarding examination or cross-examination or other ruling made before the Judge may be relied upon in an appeal. Each issue set forth in the appeal petition and the arguments regarding each issue shall be separately numbered; shall be plainly and concisely stated; and shall contain detailed citations to the record, statutes, regulations, or authorities being relied upon in support of each argument. A brief may be filed in support of the appeal simultaneously with the appeal petition.

**(b)**_Response to appeal petition._ Within 20 days after the service of a copy of an appeal petition and any brief in support thereof, filed by a party to the proceeding, any other party may file with the Hearing Clerk a response in support of or in opposition to the appeal and in such response any relevant issue, not presented in the appeal petition, may be raised.

**(c)**_Transmittal of record._ Whenever an appeal of a Judge's decision is filed and a response thereto has been filed or time for filing a response has expired, the Hearing Clerk shall transmit to the Judicial Officer the record of the proceeding. Such record shall include: the pleadings; motions and requests filed and rulings thereon; the transcript or recording of the testimony taken at the hearing, together with the exhibits filed in connection therewith; any documents or papers filed in connection with a prehearing conference; such proposed findings of fact, conclusions, and orders, and briefs in support thereof, as may have been filed in connection with the proceeding; the Judge's decision; such exceptions, statements of objections and briefs in support thereof as may have been filed in the proceeding; and the appeal petition, and such briefs in support thereof and responses thereto as may have been filed in the proceeding.

**(d)**_Oral argument._ A party bringing an appeal may request, within the prescribed time for filing such appeal, an opportunity for oral argument before the Judicial Officer. Within the time allowed for filing a response, appellee may file a request in writing for opportunity for such an oral argument. Failure to make such request in writing, within the prescribed time period, shall be deemed a waiver of oral argument. The Judicial Officer may grant, refuse, or limit any request for oral argument. Oral argument shall not be transcribed unless so ordered in advance by the

Add. 19

Judicial Officer for good cause shown upon request of a party or upon the Judicial Officer's own motion.

**(e)**_Scope of argument._ Argument to be heard on appeal, whether oral or on brief, shall be limited to the issues raised in the appeal or in the response to the appeal, except that if the Judicial Officer determines that additional issues should be argued, the parties shall be given reasonable notice of such determination, so as to permit preparation of adequate arguments on all issues to be argued.

**(f)**_Notice of argument; postponement._ The Hearing Clerk shall advise all parties of the time and place at which oral argument will be heard. A request for postponement of the argument must be made by motion filed a reasonable amount of time in advance of the date fixed for argument.

**(g)**_Order of argument._ The appellant is entitled to open and conclude the argument.

**(h)**_Submission on briefs._ By agreement of the parties, an appeal may be submitted for decision on the briefs, but the Judicial Officer may direct that the appeal be argued orally.

**(i)**_Decision of the judicial officer on appeal._ As soon as practicable after the receipt of the record from the Hearing Clerk, or, in case oral argument was had, as soon as practicable thereafter, the Judicial Officer, upon the basis of and after due consideration of the record and any matter of which official notice is taken, shall rule on the appeal. If the Judicial Officer decides that no change or modification of the Judge's decision is warranted, the Judicial Officer may adopt the Judge's decision as the final order in the proceeding, preserving any right of the party bringing the appeal to seek judicial review of such decision in the proper forum. A final order issued by the Judicial Officer shall be filed with the Hearing Clerk. Such order may be regarded by the respondent as final for purposes of judicial review without filing a petition for rehearing, reargument, or reconsideration of the decision of the Judicial Officer.

§ 1.146 Petitions for reopening hearing; for rehearing or reargument of proceeding; or for reconsideration of the decision of the Judicial Officer.

**(a)**_Petition requisite_—(1) _Filing; service; ruling._ A petition for reopening the hearing to take further evidence, or for rehearing or reargument of the proceeding, or for reconsideration of the decision of the Judicial Officer, must be made by petition filed with the Hearing Clerk. Every such petition must state specifically the grounds relied upon. Any such petition filed prior to the filing of an appeal of the Judge's decision pursuant to § 1.145 shall be ruled upon by the Judge, and any such petition filed thereafter shall be ruled upon by the Judicial Officer.

**(2)**_Petition to reopen hearing._ A petition to reopen a hearing to take further evidence may be filed at any time prior to the issuance of the decision of the Judicial Officer. Every such petition shall state briefly the nature and purpose of the evidence to be adduced, shall show that such evidence is not merely cumulative, and shall set forth a good reason why such evidence was not adduced at the hearing.

**(3)**_Petition to rehear or reargue proceeding, or to reconsider the decision of_ the Judicial Officer. A petition to rehear or reargue the proceeding or to reconsider the decision of the Judicial Officer shall be filed within 10 days after the date of service of such decision upon the party filing the petition. Every petition must state specifically the matters claimed to have been erroneously decided and alleged errors must be briefly stated.

**(b)**_Procedure for disposition of petitions._ Within 20 days following the service of any petition provided for in this section, any party to the proceeding may file with the Hearing Clerk a reply thereto. As soon as practicable thereafter, the Judge or the Judicial Officer, as the case may be, shall announce the determination whether to grant or deny the petition. The decision of the

Judicial Officer shall automatically be stayed pending the determination to grant or deny a timely petition. Such decision shall not be final for purposes of judicial review until the petition is denied or the decision is affirmed or modified pursuant to the petition and the time for judicial review shall begin to run upon the filing of such final action on the petition. In the event that any such petition is granted, the applicable rules of practice, as set out elsewhere herein, shall be followed. A person filing a petition under this section shall be regarded as the moving party, although such person shall be referred to as the complainant or respondent, depending upon the designation in the original proceeding.

§ 1.147 Filing; service; extensions of time; and computation of time.

**(a)** *Filing; number of copies.* Except as otherwise provided in this section, all documents or papers required or authorized by the rules in this part to be filed with the Hearing Clerk shall be filed in quadruplicate: *Provided,* That where there are more than two parties in the proceeding, an additional copy shall be filed for each additional party. Any document or paper required or authorized under the rules in this part to be filed with the Hearing Clerk shall, during the course of an oral hearing, be filed with the Judge.

**(b)** *Who shall make service.* Copies of all such documents or papers required or authorized by the rules in this part to be filed with the Hearing Clerk shall be served upon the parties by the Hearing Clerk, or by some other employee of the Department, or by a U.S. Marshal or deputy marshal.

**(c)** *Service on party other than the Secretary.* (1) Any complaint or other document initially served on a person to make that person a party respondent in a proceeding, proposed decision and motion for adoption thereof upon failure to file an answer or other admission of all material allegations of fact contained in a complaint, initial decision, final decision, appeal petition filed by the Department, or other document specifically ordered by the Judge to be served by certified or registered mail, shall be deemed to be received by any party to a proceeding, other than the Secretary or agent thereof, on the date of delivery by certified or registered mail to the last known principal place of business of such party, last known principal place of business of the attorney or representative of record of such party, or last known residence of such party if an individual, *Provided that,* if any such document or paper is sent by certified or registered mail but is returned marked by the postal service as unclaimed or refused, it shall be deemed to be received by such party on the date of remailing by ordinary mail to the same address.

**(2)** Any document or paper, other than one specified in paragraph (c)(1) of this section or written questions for a deposition as provided in § 1.148(d)(2), shall be deemed to be received by any party to a proceeding, other than the Secretary or agent thereof, on the date of mailing by ordinary mail to the last known principal place of business of such party, last known principal place of business of the attorney or representative of record of such party, or last known residence of such party if an individual.

**(3)** Any document or paper served other than by mail, on any party to a proceeding, other than the Secretary or agent thereof, shall be deemed to be received by such party on the date of:

**(i)** Delivery to any responsible individual at, or leaving in a conspicuous place at, the last known principal place of business of such party, last known principal place of business of the attorney or representative of record of such party, or last known residence of such party if an individual, or

**(ii)** Delivery to such party if an individual, to an officer or director of such party if a corporation, or to a member of such party if a partnership, at any location.

Add. 21

**(d)***Service on another.* Any subpoena, written questions for a deposition under § 1.148(d)(2), or other document or paper, served on any person other than a party to a proceeding, the Secretary or agent thereof, shall be deemed to be received by such person on the date of:

**(1)** Delivery by certified mail or registered mail to the last known principal place of business of such person, last known principal place of business of the attorney or representative of record of such person, or last known residence of such person if an individual;

**(2)** Delivery other than by mail to any responsible individual at, or leaving in a conspicuous place at, any such location; or

**(3)** Delivery to such party if an individual, to an officer or director of such party if a corporation, or to a member of such party if a partnership, at any location.

**(e)***Proof of service.* Any of the following, in the possession of the Department, showing such service, shall be deemed to be accurate:

**(1)** A certified or registered mail receipt returned by the postal service with a signature;

**(2)** An official record of the postal service;

**(3)** An entry on a docket record or a copy placed in a docket file by the Hearing Clerk of the Department or by an employee of the Hearing Clerk in the ordinary course of business;

**(4)** A certificate of service, which need not be separate from and may be incorporated in the document or paper of which it certifies service, showing the method, place and date of service in writing and signed by an individual with personal knowledge thereof, *Provided* that such certificate must be verified by oath or declaration under penalty of perjury if the individual certifying service is not a party to the proceeding in which such document or paper is served, an attorney or representative of record for such a party, or an official or employee of the United States or of a State or political subdivision thereof.

**(f)***Extensions of time.* The time for the filing of any document or paper required or authorized under the rules in this part to be filed may be extended by the Judge or the Judicial Officer as provided in § 1.143, if, in the judgment of the Judge or the Judicial Officer, as the case may be, there is good reason for the extension. In all instances in which time permits, notice of the request for extension of the time shall be given to the other party with opportunity to submit views concerning the request.

**(g)***Effective date of filing.* Any document or paper required or authorized under the rules in this part to be filed shall be deemed to be filed at the time when it reaches the Hearing Clerk; or, if authorized to be filed with another officer or employee of the Department it shall be deemed to be filed at the time when it reaches such officer or employee.

**(h)***Computation of time.* Saturdays, Sundays and Federal holidays shall be included in computing the time allowed for the filing of any document or paper: *Provided,* That, when such time expires on a Saturday, Sunday, or Federal holiday, such period shall be extended to include the next following business day.

§ 1.148Depositions.

**(a)***Motion for taking deposition.* Upon the motion of a party to the proceeding, the Judge may, at any time after the filing of the complaint, order the taking of testimony by deposition. The Motion shall be in writing, shall be filed with the Hearing Clerk, and shall set forth:

**(1)** The name and address of the proposed deponent;

**(2)** The name and address of the person (referred to hereafter in this section as the "officer") qualified under the regulations in this part to take depositions, before whom the proposed examination is to be made;

**(3)** The proposed time and place of the examination, which shall be at least 15 days after the date of the mailing of the motion; and

**(4)** The reasons why such deposition should be taken, which shall be solely for the purpose of eliciting testimony which otherwise might not be available at the time of hearing, for uses as provided in paragraph (g) of this section.

**(b)***Judge's order for taking deposition.* (1) If the Judge finds that the testimony may not be otherwise available at the hearing, the taking of the deposition may be ordered. The order shall be filed with the Hearing Clerk and shall state:

**(i)** The time of the deposition;

**(ii)** The place of the deposition;

**(iii)** The manner of the deposition (telephone, audio-visual telecommunication, or personal attendance of those who are to participate in the deposition);

**(iv)** The name of the officer before whom the deposition is to be made; and

**(v)** The name of the deponent. The officer and the time, place, and manner need not be the same as those suggested in the motion for the deposition.

**(2)** The deposition shall be conducted by telephone unless the Judge determines that conducting the deposition by audio-visual telecommunication:

**(i)** Is necessary to prevent prejudice to a party;

**(ii)** Is necessary because of a disability of any individual expected to participate in the deposition; or

**(iii)** Would cost less than conducting the deposition by telephone. If the Judge determines that a deposition conducted by audio-visual telecommunication would measurably increase the United States Department of Agriculture's cost of conducting the deposition, the deposition shall be conducted by personal attendance of any individual who is expected to participate in the deposition or by telephone.

**(3)** If the deposition is not conducted by telephone, the deposition shall be conducted by audio-visual telecommunication unless the Judge determines that conducting the deposition by personal attendance of any individual who is expected to participate in the deposition:

**(i)** Is necessary to prevent prejudice to a party;

**(ii)** Is necessary because of a disability of any individual expected to participate in the deposition; or

**(iii)** Would cost less than conducting the deposition by telephone or audio-visual telecommunication.

**(c)***Qualifications of officer.* The deposition shall be made before the Judge or before an officer authorized by the law of the United States or by the law of the place of the examination to administer oaths, or before an officer authorized by the Secretary to administer oaths.

**(d)***Procedure on examination.* (1) The deponent shall be examined under oath or affirmation and shall be subject to cross-examination. Objections to questions or documents shall be in short form, stating the grounds of objections relied upon. The questions proponded, together with all objections made (but not including argument or debate), shall be recorded verbatim. In lieu of oral examination, parties may transmit written questions to the officer prior to the examination and the officer shall propound such questions to the deponent.

**(2)** The applicant shall arrange for the examination of the witness either by oral examination, or by written questions upon agreement of the parties or as directed by the Judge. If the examination is conducted by means of written questions, copies of the applicant's questions must be received by the other party to the proceeding and the officer at least 10 days prior to the date

set for the examination unless otherwise agreed, and any cross questions of a party other than the applicant must be received by the applicant and the officer at any time prior to the time of the examination.

**(e)***Certification by officer.* The officer shall certify on the deposition that the deponent was duly sworn and that the deposition is a true record of the deponent's testimony. The officer shall then securely seal the deposition, together with one copy thereof (unless there are more than two parties in the proceeding, in which case there should be another copy for each additional party), in an envelope and mail the same by registered or certified mail to the Hearing Clerk.

**(f)***Corrections to the transcript or recording.* (1) At any time prior to the hearing, any party may file a motion proposing corrections to the transcript or recording of the deposition.

**(2)** Unless a party files such a motion in the manner prescribed, the transcript or recording shall be presumed, except for obvious typographical errors, to be a true, correct, and complete transcript or recording of the testimony given in the deposition proceeding and to contain an accurate description or reference to all exhibits in connection therewith, and shall be deemed to be certified correct without further procedure.

**(3)** At any time prior to use of the deposition in accordance with paragraph (g) of this section and after consideration of any objections filed thereto, the Judge may issue an order making any corrections in the transcript or recording which the Judge finds are warranted, which corrections shall be entered onto the original transcript or recording by the Hearing Clerk (without obscuring the original text).

**(g)***Use of deposition.* A deposition ordered and taken in accordance with the provisions of this section may be used in a proceeding under these rules if the Judge finds that the evidence is otherwise admissible and (1) that the witness is dead; (2) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; (3) that the party offering the deposition has endeavored to procure the attendance of the witness by subpoena, but has been unable to do so; or (4) that such exceptional circumstances exist as to make it desirable, in the interests of justice, to allow the deposition to be used. If the party upon whose motion the deposition was taken refuses to offer it in evidence, any other party may offer the deposition or any part thereof in evidence. If only part of a deposition is offered in evidence by a party, an adverse party may require the introduction of any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts.

§ 1.149 Subpoenas. [3]

Footnote(s):

[3] This section relates only to subpoenas for the stated purpose and has no relevance with respect to investigatory subpoenas.

**(a)***Issuance of subpoenas.* The attendance and testimony of witnesses and the production of documentary evidence from any place in the United States on behalf of any party to the proceeding may be required by subpoena at any designated place of hearing if authorized by the statute under which the proceeding is conducted. Subpoenas shall be issued by the Judge upon a reasonable showing by the applicant of the grounds and necessity thereof; and with respect to subpoenas for the production of documents, the request shall also show their competency, relevancy, and materiality. All requests for subpoenas shall be in writing, unless waived by the Judge for good cause shown. Except for good cause shown, requests for subpoenas shall be received by the Judge at least 10 days prior to the date set for the hearing.

**(b)***Service of subpoenas.* Subpoenas may be served by any person not less than 18 years of age. The party at whose instance a subpoena is issued shall be responsible for service thereof. Subpoenas shall be served as provided in § 1.147.

§ 1.150 Fees of witnesses.
Witnesses summoned under these rules of practice shall be paid the same fees and mileage that are paid witnesses in the courts of the United States, and witnesses whose depositions are taken, and the officer taking the same, shall be entitled to the same fees as are paid for like services in the courts of the United States. Fees shall be paid by the party at whose instance the witness appears or the deposition is taken.

§ 1.151 *Ex parte* communications.
**(a)** At no stage of the proceeding between its institution and the issuance of the final decision shall the Judge or Judicial Officer discuss *ex parte* the merits of the proceeding with any person who is connected with the proceeding in an advocative or in an investigative capacity, or with any representative of such person: *Provided,* That procedural matters shall not be included within this limitation; and *Provided further,* That the Judge or Judicial Officer may discuss the merits of the case with such a person if all parties to the proceeding, or their attorneys have been given notice and an opportunity to participate. A memorandum of any such discussion shall be included in the record.
**(b)** No interested person shall make or knowingly cause to be made to the Judge or Judicial Officer an *ex parte* communication relevant to the merits of the proceeding.
**(c)** If the Judge or the Judicial Officer receives an *ex parte* communication in violation of this section, the one who receives the communication shall place in the public record of the proceeding:
**(1)** All such written communications;
**(2)** Memoranda stating the substance of all such oral communications; and
**(3)** All written responses, and memoranda stating the substance of all oral responses thereto.
**(d)** Upon receipt of a communication knowingly made or knowingly caused to be made by a party in violation of this section, the Judge or Judicial Officer may, to the extent consistent with the interests of justice and the policy of the underlying statute, require the party to show cause why his claim or interest in the proceeding should not be dismissed, denied, disregarded, or otherwise adversely affected on account of such violation.
**(e)** To the extent consistent with the interests of justice and the policy of the underlying statute, a violation of this section shall be sufficient grounds for a decision adverse to the party who

Add. 25

knowingly commits a violation of this section or who knowingly causes such a violation to occur.

**(f)** For purposes of this section *ex parte communication* means an oral or written communication not on the public record with respect to which reasonable prior notice to all parties is not given, but it shall not include requests for status reports on any matter or the proceeding.